UNION INTERCHANGE, INC., A CORPORATION, PLAINTIFF AND APPELLANT, *v.* JOHN L. PARKER AND WOODROW PARKER, DOING BUSINESS AS PARKER BROTHERS DAIRY, DEFENDANTS AND RESPONDENTS.

No. 9937.
Submitted May 5, 1960. Decided November 21, 1960.
357 P.2d 339

Ernest F. Boschert, Billings, Alvin G. Greenwald, Los Angeles, Cal., argued orally for appellant.

F. N. Hammau, J. A. Turnage, Polson, argued orally for respondents.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This is an action to recover on a written contract wherein plaintiff sought to recover the sum of $1,350, together with interest, attorney's fees, and costs. The jury returned a verdict in favor of defendants and plaintiff appealed from the judgment

entered thereon in the district court of the fourth judicial district, Lake County.

Sometime prior to execution of the contract in question, one of the defendants received a card through the mail inquiring if he was interested in selling his property; the card was mailed to this defendant by plaintiff from Los Angeles, California. The reverse side of the card, which constituted an invitation to plaintiff to have its representative call on the sender, was filled out by one of the defendants and returned to plaintiff. A representative of plaintiff, a California corporation, called on defendants and explained the possibilities of contacting out of state buyers by advertising in certain of plaintiff's publications. This representative was not a resident of Montana, nor did he maintain an office within the state. As a result of this conversation, defendants signed a printed contract for publication by plaintiff of advertisements for the sale of defendants' dairy farm. This printed form stated that the agreement contained therein would become effective only when accepted by plaintiff at its office in Los Angeles, California; it was sent by the representative to plaintiff's Los Angeles office where it was accepted and a letter of acceptance was mailed to defendants. Plaintiff published the advertisement in the issues of plaintiff's publications as called for by the contract and thereafter demanded payment from defendants. Certain correspondence between the parties followed, but payment was never forthcoming and plaintiff instituted this action.

By answer defendants admitted they had signed the instrument and that plaintiff had demanded payment, but denied the other allegations of the complaint. As a special defense, defendants alleged that the contract lacked consideration and mutuality; that it had not been accepted nor performed; and further that their signatures had been procured by fraud, misrepresentation, artifice, and deceit.

On the day set for trial, defendants proposed an amendment to their answer to which plaintiff objected and made a motion

to strike. The objection and the motion to strike were taken under advisement, but no formal disposition was ever made of them. The additional defenses set forth in the amendment were to the effect that plaintiff had not complied with section 15-1701, R.C.M. 1947, which requires foreign corporations doing business in Montana to file with the secretary of state a duly certified copy of their articles of incorporation, and also a statement showing the name of such corporation and the location of its principal office or place of business without this state, the location of the place of business or principal office within this state; the names and residences of the officers, trustees, or directors; the amount of capital stock; and the amount of capital invested in the State of Montana; and further that plaintiff had not complied with section 66-1910, R.C.M. 1947, which requires persons or corporations desiring to carry on the business of real estate broker in the State of Montana to be licensed and bonded.

Section 15-1703, R.C.M. 1947, provides that no domestic contracts entered into by a foreign corporation while doing business in this state shall be enforceable until the corporation has complied with the provisions of section 15-1701. Section 66-1920, R.C.M. 1947, provides that no person or corporation carrying on the business of real estate broker within this state shall maintain an action in the courts of this state to recover for services alleged to be earned as a real estate broker without alleging and proving that they were duly licensed pursuant to section 66-1910, at the time the cause of action arose.

Plaintiff's objection and motion to strike were based on the contention that as a matter of law they were not doing business in the State of Montana within the purview of section 15-1701, nor were they carrying on the business of real estate broker within the purview of sections 66-1903 and 66-1910, which respectively define a real estate broker and require a license to engage in such activity. During the course of the trial, plaintiff also objected to much evidence, the content of which will be

disclosed later, which was admitted in support of the allegations of the amended answer.

Plaintiff's specifications of error may be considered under four divisions. First, that plaintiff's rights were prejudiced by the filing of defendant's amendment to their answer; second, that plaintiff is a foreign corporation engaged in interstate commerce and therefore not subject to the provisions of sections 15-1701, 15-1703; third, that plaintiff is not carrying on the business of real estate broker and therefore not subject to the provisions of sections 66-1903, 66-1910, 66-1920; and fourth, that plaintiff's rights were prejudiced by the variance allowed and directed by the trial court from the order of trial as provided by the code.

The trial court permitted defendants to make the amendment to their answer on the date set for trial, on the authority of section 93-3905, R.C.M. 1947, which in part reads as follows:

"The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect; and may, upon like terms, enlarge the time for answer, reply, or demurrer. The court may likewise, in its discretion after notice to or in the presence of the adverse party, allow, upon such terms as may be just, an amendment to any pleading or proceeding in other particulars."

Time after time, this court, in interpreting this section and its identical predecessor in previous revisions of the code, has set forth the following proposition: "The power to allow the amendments at any stage of the trial is within the discretion of the trial court, and its action in this behalf is not subject to review by this court, unless it is affirmatively shown that it abused its discretion to the prejudice of the adverse party." Buhler v. Loftus, 53 Mont. 546, 559, 165 P. 601, 606. To cite all of the cases that state this proposition would serve no useful

purpose; they can be found in the extended annotation following section 93-3905, R.C.M. 1947.

It is manifest from these authorities, that in order for plaintiff herein to be entitled to a reversal on the first division of its specifications of error, it is necessary that plaintiff show wherein the trial court has abused its discretion in allowing the amendment, and that such abuse of discretion has resulted in prejudice to plaintiff. Plaintiff's contention seems to be that the abuse of discretion resulted from the fact that for many months defendants had knowledge of the fact that the plaintiff was a foreign corporation and with such knowledge available made no effort to amend their answer before the day of trial, and that upon presenting the proposed amendments, defendants offered no excuse whatsoever for their tardiness and delay, nor was any excuse requested by the trial court. Plaintiff states that it was prejudiced by this untimely amendment because it raised new issues which plaintiff was not prepared to meet. Plaintiff also contends it was in no position to request a continuance because its only witness, an employee, was from Los Angeles, California, and any further absence from his regular duties with the plaintiff in its Los Angeles office would cause additional and unnecessary expense to plaintiff.

The mere circumstance that defendants had knowledge of the facts for many months and offered no excuse for the delay in proposing their amendment should not be sufficient in itself to compel denial of the amendment by the trial court. In other words, it cannot be said that an allowance of an amendment where these conditions exist is necessarily an abuse of discretion. Other factors surrounding the proposal of the amendment should also be considered, and if from a consideration of all the factors involved it does not appear that the trial court abused its discretion in allowing an amendment, this court will not reverse the trial court's action. The policy of the law is to permit amendments to the pleadings in order that litigants may have their causes submitted upon every meritorious consideration that

may be open to them; therefore, it is the rule to allow amendments and the exception to deny them. Cullen v. Western Mortgage & Warranty Title Co., 47 Mont. 513, 529, 134 P. 302. There was no error in the trial court's allowance of defendant's amendment to their answer.

Furthermore, plaintiff is not in any position to claim that the trial court abused its discretion in allowing defendants' amendment. At the time the amendment was proposed, plaintiff did not make any effort to get a continuance, nor did it make any suggestion that it was not prepared to proceed; in fact, counsel for plaintiff, in commenting to the trial court on the motion before the trial court on the question whether plaintiff was a foreign corporation doing business in the State of Montana within the purview of section 15-1701, had this to say: "We have many authorities ready to cite in that situation, Your Honor."

This court, in Clack v. Clack, 98 Mont. 552, 41 P.2d 32, 35, when confronted with a somewhat similar situation wherein appellant had objected to an amendment, but had not pleaded surprise, nor asked for a continuance, had the following to say: "There is nothing in the record here, other than the bare assertion of appellant, to indicate that the court abused its discretion in allowing the amendment. There is no showing that appellant was taken by surprise or placed at a disadvantage by the granting of the amendment. She failed to ask for a continuance, or to make any suggestion whatsoever that she was not prepared to proceed to trial on the facts presented by the amended complaint. Therefore she is not in a position now successfully to assert that the trial court abused its discretion in granting the motion to amend."

Plaintiff's claim that it was not in a position to ask for a continuance comes to naught, for in a proper case the trial court can impose such terms as are just upon the party requesting the amendment. One of these terms might be that the objecting party should be given a continuance while the party proposing

the amendment should have to agree to bear the cost of the delay. Apple v. Seaver, 70 Mont. 65, 223 P. 830.

This brings us to the second and third divisions of plaintiff's specifications of error. The gist of these specifications seems to be that defendants' proposed amendment presented the question whether plaintiff's activities brought it within the purview of sections 15-1701, 66-1903, and 66-1910, respectively, and that in support of the allegations in the amendment the trial court allowed highly prejudicial, and otherwise irrelevant evidence to go to the jury, and that the trial court instructed the jury in such a manner that they were to consider this evidence and make a finding on the aforementioned question of law, which finding was solely within the province of the trial court.

In our system of jurisprudence the determination of questions of law, except in prosecutions for libel (State Constitution, Art. III, § 10) is for the court. Murray v. Heinze, 17 Mont. 353, 42 P. 1057, 43 P. 714. This policy is expressly set forth in section 93-2501-2, R.C.M. 1947, as follows:

"All questions of law, including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other writings, and other rules of evidence, are to be decided by the court, and all discussions of law addressed to it. Whenever the knowledge of the court is, by this code, made evidence of a fact, the court is to declare such knowledge to the jury, who are bound to accept it."

This court, in State v. Vettere, 76 Mont. 574, 587, 248 P. 179, 183, wherein it was faced with determining the meaning of the above section in reference to the question of who is to determine the admissibility of testimony, had the following to say: "Our Codes, therefore, expressly withdraw from the consideration of the jury the question of the admissibility of the testimony, and the court but performed the duty imposed upon it by statute in determining the admissibility of the dying declaration upon the preliminary showing of facts tending to prove its admissibility and in refusing to submit that question to the jury,

and the objections raised on the settlement of the instructions on this ground were without merit.''

It would be error for the trial court to submit such a question of law to the jury. State v. Sherman, 35 Mont. 512, 519, 90 P. 981, 119 Am.St.Rep. 869.

■ The determination whether plaintiff was doing business in the State of Montana within the purview of section 15-1701 or was carrying on the business of real estate broker within the purview of section 66-1903, were questions of law as contemplated by the phrase ''and the construction of statutes and other writings'' in section 93-2501-2. In the instant case, the trial court erroneously submitted these questions of law to the jury in its Instructions 30 and 31, which respectively read as follows:

''You are instructed that if you find from the evidence by a preponderance thereof, that the plaintiff is a foreign corporation, or though a domestic corporation [sic], and that they as such engaged in the real estate business within the State of Montana, with the intent and purpose of selling, buying, or exchanging in real estate transactions, and at the same time find from a preponderance of the evidence that they have failed to comply with the law of this state in reference to procuring a license entitling them to engage in such business, furnish the necessary bond therefor, then and in such event they cannot recover on this alleged contract and your verdict should be for the defendants.''

''You are instructed that if you find from a preponderance of the evidence that the plaintiff was engaged in the transaction of business within the State of Montana, as a foreign corporation, in a general manner, and not in isolated cases, and that they failed to comply with the laws of the State of Montana, in reference to filing in the office of the Secretary of State a certified copy of their Articles of Incorporation, and other state requirements in reference of the operation within the State of Montana, of foreign corporations, they are barred from recovery upon the purported contract as set forth in their complaint.''

It is true, as defendants contend, that if the above error was merely a technical error which did not affect the substantial rights of plaintiff, plaintiff would not be entitled to a reversal predicated on that error. Section 93-3909, R.C.M. 1947.

However, in the instant case the error did work substantial prejudice to plaintiff. In determining the questions submitted to them in the instructions, the jury was allowed to consider much evidence which was highly prejudicial to plaintiff. This evidence was entered by defendants over plaintiff's objection on the theory that it tended to show that plaintiff was carrying on the business of real estate broker in the State of Montana and also was doing business in Montana. If these questions had been properly dealt with by the trial court and determined by it, this evidence would not properly have been received by the jury, nor left to their consideration. This evidence consisted of testimony by the Commissioner of the Department of Agriculture of the State of Montana that he considered plaintiff's activities as being within the purview of one carrying on the business of real estate broker as defined by section 66-1903; and an exhibit which consisted of a letter sent by the Commissioner to plaintiff on May 23, 1955, informing them that he considered plaintiff's activities in Montana to be prohibited by law and that he planned to put a stop to them.

Some 29 exhibits, which had nothing to do with the present transaction, but which purported to be complaints by disgruntled landowners who felt they had been cheated by plaintiff's representative were also entered into evidence during the course of the examination of the Commissioner of Agriculture. There were also other witnesses who testified either to the fact that they were licensed real estate brokers in Montana and never accepted a fee until a sale was completed, or that they also had dealt with plaintiff's representative and felt that they had been cheated by him. To allow this evidence, which had nothing to do with the transaction involved and the issues to be considered by the jury, was error.

358

There still remains for consideration plaintiff's contention that they are engaged in interstate commerce, and therefore not doing business in the State of Montana within the purview of section 15-1701, and that they are not carrying on the business of real estate broker within the purview of section 66-1903.

The rule that a state cannot exact conditions for permission to do interstate commerce is one so well-known that it does not need citation of authority to support it. Interstate Commerce has been defined by the Supreme Court of the United States in such broad terms that it encompasses all commercial activity between nations and among citizens of the various states. That court has held that an insurance company which conducts its business transactions across state lines is engaged in interstate commerce. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440. From this, it is apparent that for an activity to be classified as interstate commerce it is not necessary that such activity encompass the transfer of goods, persons, or things across state lines, but that mere correspondence resulting in contractual obligations between citizens of different states can also constitute interstate commerce.

The whole operation of plaintiff consists of nine steps: (1) there is a solicitation for customers (conducted by mail from the state of incorporation); (2) the customer responds and invites a salesman to call (by mail, sent to the state of incorporation); (3) a salesman of the plaintiff calls upon the prospective customer, to sell the advertising order (this is the sole activity conducted outside of the state of incorporation); (4) the contract is submitted to the company for acceptance (by mail to the state of incorporation); (5) the contract is accepted (in the state of incorporation); (6) the company processes and handles the account (only in the state of incorporation); and (7) all performance under the contract is completed by the printing and mailing out of the plaintiff's pub-

lications (only in the state of incorporation); (8) the obligation is payable to the company at its office (in the state of incorporation); and (9) all offices as well as employees are maintained in the state of incorporation. These activities which result in contractual obligations between citizens of different states constitute interstate commerce.

Furthermore, even though plaintiff is not engaged in selling goods or wares, but rather in the selling of advertising space, its activity is not unlike the solicitation of orders for goods within a state by a drummer who is an agent of a foreign corporation, such goods to be shipped to the buyer from another state. It has been held many times that such activity by drummers constitutes interstate commerce. Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694; Corson v. State of Maryland, 120 U.S. 502, 7 S.Ct. 655, 30 L.Ed. 699; Asher v. State of Texas, 128 U.S. 129, 9 S.Ct. 1, 32 L.Ed. 368.

Plaintiff's activities in this state being interstate commerce, they are not subject to the provisions of section 15-1701. This court, in McNaughton v. McGirl, 20 Mont. 124, 49 P. 651, 656, 38 L.R.A. 367, when confronted with the very same problem which exists here, that is, whether a statute which reads "All foreign incorporations * * * shall, before doing any business of any kind * · * * within this territory, file in the office of the secretary of the territory * * * a duly authenticated copy of their charter, or certificate of incorporation, and also a statement, * * *" section 442, 5th Div. Comp. Stat. 1887, is applicable to foreign corporations engaged in interstate commerce in this state, had this to say in reference to the construction to be placed on that statute: "Perhaps the legislature did not mean to extend the statute under consideration to foreign corporations engaged in interstate commerce. The presumption would be that they did not, but whatever the purpose may have been in this respect is immaterial to this discussion; for, if it was intended to include such foreign corpora-

tions, we hold the statute unconstitutional in that respect.''
The statute which was being construed in the McNaughton
case is the predecessor to section 15-1701.

Turning now to section 66-1903, R.C.M.1947, as it
read at the time of the execution of the contract involved in
this case. This statute defined a real estate broker in these
words:

''A 'real estate broker,' within the meaning of this act, is
a person who for a compensation, or promise thereof, sells or
offers for sale, buys, or offers to buy, negotiates, or offers to
negotiate, either directly or indirectly, whether as the employee
of another or otherwise, the purchase, sale, exchange of real
estate, or any interest therein, for others, as a whole or partial
vocation.''

The only words in such definition which could apply to the
activity of plaintiff would be ''offers for sale'', but a reading
of the advertisement shows that the ''offer for sale'' is made
by the owner defendants.

That such statute did not cover the activities of plaintiff
must have become apparent to the legislature because it amended
section 66-1903 at its 1957 Session and broadened the definition
so that as it now reads it would cover such a business as plain-
tiff's within the definition of a real estate broker.

While the Commissioner of Agriculture of the State of Mon-
tana interpreted the section in a different light as shown by
defendants' exhibit 3, his letter to plaintiff's attorneys in Cali-
fornia, wherein he stated: ''Union Interchange, Inc. is violating
our law by offering to 'negotiate, either directly or indirectly,
whether as the employee of another or otherwise, the purchase,
sale, exchange, of real estate, or any interest therein, for others.'
We interpret the activity of advertising for the purpose of
bringing buyer and seller together as dealing in real estate,
even though it may be an 'indirect' activity.'' We are unable
to accept such interpretation.

We hold that the definition of a real estate broker as con-

tained in section 66-1903, before amendment, does not include an activity such as carried on by plaintiff and therefore such statute is not applicable.

Since the cause must be remanded for a new trial no purpose would be served by a discussion of the fourth division of the specifications of error.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

MR. JUSTICE ANGSTMAN and MR. JUSTICE CASTLES concur.

MR. JUSTICE BOTTOMLY not participating.

MR. JUSTICE ADAIR dissenting.

To me the record shows that the appellant, Union Interchange, Inc., a corporation incorporated and existing under the laws of the State of California, was and is engaged in dealing in real estate situate entirely within the State of Montana, and that is owned entirely by bona fide residents of Montana who actually live and make their homes in Montana.

The record shows that such California corporation has sent its authorized representative and agent into the State of Montana for the express purpose of contacting bona fide residents of Montana to obtain their signatures to the corporation's printed contract form, agreeing for the contacting of prospective out of state buyers for farms and other real property wholly within Montana and owned by the signers of the corporation's printed contract form.

I, like the Commissioner of Agriculture of the State of Montana, am of the opinion that the activities so engaged in by the appellant corporation constitute "dealing in real estate" within the State of Montana, and therefore such activity is subject to Montana's laws and statutes. I therefore dissent to the foregoing majority opinion.