No. 80-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

BRUCE E. KEASTER and JANET M.
KEASTER, husband and wife,

Plaintiffs and Respondents,

vs.

ANDY BOZIK, a single man;
FEDERAL LAND BANK OF SPOKANE, et al.,

Defendants and Appellants.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellants:

Robert J. Emmons, Great Falls, Montana

For Respondents:

Graybill, Ostrem, Warner and Crotty, Great Falls, Montana

Submitted on briefs: November 26, 1980

Decided: FEB 11 1981

Filed: FEB 11 1981

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Bruce E. and Janet Keaster brought this action for specific performance of a real estate option in the Cascade County District Court on April 14, 1978. The District Court entered a judgment requiring defendant Andy Bozik to comply with the terms of the option and awarding actual damages of $15,300 to the plaintiffs and $5,200 to the defendant. Defendant Andy Bozik appeals.

Bruce Keaster, the buyer, and Andy Bozik, the seller, entered into an option to purchase real estate on April 15, 1977. The option contained a legal description of the subject property, 899 acres of Bozik's land. The agreement was a standard Farm Home Administration (FHA) option contract and included the following term.

> "The offer herein shall remain irrevocable for a period of six months from the date hereof and shall remain in force thereafter until one (1) year from the date hereof unless earlier terminated by the Seller. The Seller may terminate this offer at any time after the six (6) months' irrevocable period provided herein by giving to the Buyer ten (10) days' written notice of intention to terminate at the address of the Buyer. Acceptance of this option by the Buyer within ten (10) days after such notice is received by him shall constitute a valid acceptance of the option."

The option signed on April 15, 1977, stated a consideration of "$5.00 in hand paid and other valuable consideration" and further provided that "this option is given to enable the Buyer to obtain a loan insured or made by the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture . . . for the purchase of said property. It is agreed that the Buyer's efforts to obtain a loan constitute a part of the consideration for this option. . ."

The sales price was $200,000, $56,000 as a down payment and $144,000 over 30 years at 6% interest (annual payment of

$10,461.00). The contract was amended on April 26, 1977, to make the contract payable over 20 years at an annual payment of $12,554.57.

On May 2, 1977, Keaster and Bozik signed a "declaration of interest and agreement" acknowledging the option to purchase. This document was recorded with the Cascade County clerk and recorder on May 25, 1977.

In early April of 1978, respondent Bruce Keaster attempted to exercise the option. Appellant Andy Bozik refused to convey the property.

Following the commencement of this action on April 14, 1978, Andy Bozik filed a counterclaim seeking reformation of the contract and actual damages for Keaster's use of his pasture. The damages arose from a separate transaction and are not an issue here.

Trial commenced on January 17, 1980. During the proceedings respondent's counsel introduced evidence of actual damages suffered by Keaster after the filing of the complaint. He sought to amend the pleadings to include a prayer for damages for loss of crops and pasturage occasioned by the appellant's refusal to convey the property. The District Court allowed the amendment.

Testimony adduced at trial reveals that Bruce Keaster and Andy Bozik met several times in late March or early April of 1977 in negotiating the option. Keaster proposed an option which provided for a $60,000 down payment and interest at 4%. Bozik refused the down payment amount for income tax reasons and objected to the interest rate.

The transcript also reveals that the appellant never attempted to give a written notice of termination. Bozik testified that although Keaster and Roger Smith, the FHA county supervisor, told him that written notice was required, he believed an oral notice was sufficient since the document was never notarized. In addition Bozik testified that he had a copy of the

option agreement for the entire period.

Appellant testified that he told the respondent and Roger Smith more than six months after the option was signed that he was not going to sell. Keaster testified that the first time he learned of the appellant's intention not to comply with the option was on April 6, 1978. Keaster stated that on that day he presented a written notice of acceptance of the option, an earnest money check for $1,000 and a buy-sell agreement to Bozik at Bozik's residence. The notice of acceptance was drafted by respondent's attorney and dated April 5, 1978, and the check was dated April 6, 1978. Bozik testified that Keaster presented the check to him on April 14, 1978, and that he had never seen the other documents.

The FHA certified and approved Bruce and Janet Keaster for a loan of $46,000 prior to the expiration of the option period. The Keasters had also arranged to borrow $10,000 from a third party and had arranged to obtain $56,000 from the Belt Valley Bank for the down payment until they received the loan proceeds from the FHA and the third party.

At trial conflicting evidence was presented regarding the negotiations of the parties and their conduct before and after the signing of the agreement and at the time of the attempted exercise of the option. Of primary significance is an oral agreement that the parties intended Bozik to have the use of a house and garage on the property for as long as he desired. Bruce Keaster testified that at the time the option contract was executed it was agreed that Andy Bozik would have the use of the house and garage, but not the use of the other buildings. He understood that Bozik was to have "something like" a life estate in the house and garage. When asked why this provision was not included in the option, he testified that it was his impression that this provision would be put in upon closing. Andy Bozik testified that it was his understanding that none of the buildings were to be included in the sale.

- 4 -

The District Court entered its findings of fact, conclusions of law and judgment on February 15, 1980. The court found that the parties had agreed that Andy Bozik would have the use and occupancy of the house and garage located on the property for as long as he chooses to live there; that the option was never revoked according to its terms; that Bruce Keaster gave written notice of his acceptance of the option on April 6, 1978; that Andy Bozik breached the option agreement on the same date by refusing to sell; that the plaintiffs became entitled to the possession of the property except the house and garage on April 6, 1978; that the plaintiffs were entitled to $15,300 for the loss of profits for the 1978 and 1979 crop seasons; and that Andy Bozik was entitled to $5,200 for pasture rental arising from a separate transaction. The court concluded that the option was valid and properly exercised and that the plaintiffs were entitled to specific performance of the agreement. Andy Bozik was given "the use and occupancy of the residence and garage for as long as he chooses to live there."

Appellant Bozik asserts numerous specifications of error which can be consolidated into the following major issues:

1) Whether the District Court erred in allowing the amendment of the complaint during the trial to include damages for loss of the use of the property?

2) Whether there was adequate consideration to support specific enforcement of the option?

3) Whether the option was sufficiently complete and definite to afford the remedy of specific performance?

The issue concerning amendment of the complaint during trial is governed by the second sentence of Rule 15(b), M.R.Civ.P., which states:

> "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails

- 5 -

> to satisfy the court that the admission of such
> evidence would prejudice him in maintaining his
> action or defense upon the merits. The court may
> grant a continuance to enable the objecting
> party to meet such evidence."

It is within the discretion of the trial court whether to allow such amendment. Nothing in the record indicates an abuse of discretion.

At trial, Bozik's counsel objected to admission of testimony by Keaster as to damages for the use of the property and for loss of profits for the crop seasons of 1978 and 1979, and further objected to the Keaster's motion to amend the pleadings. The trial court allowed an offer of proof and reserved ruling until briefs were submitted after trial. The decision of the court to allow the amendment was based upon the prayer in the complaint for "such other and further relief as the Court deems just and proper."

Appellant claims he was denied the opportunity to prepare his case on the issue and therefore was denied due process. He further states that respondent knew of the claim prior to trial and should have filed a supplemental pleading or amended the pretrial order. Respondent asserts that appellant could not have been surprised by a claim for damages which flowed naturally from appellant's refusal to perform the contract.

The amendment sought by the Keasters during trial did not change the theory of liability or affect the entire complexion of the lawsuit, as did the amendments sought and refused by the trial court in Brothers v. Surplus Tractor Parts Corporation (1973), 161 Mont. 412, 506 P.2d 1362, and Montgomery v. Gehring (1965), 145 Mont. 278, 400 P.2d 403. It is within the trial court's discretion to allow amendment of the pleadings during trial if the objecting party fails to show that an amendment would result in prejudice. The failure of respondents to file a supplemental pleading or to amend the pretrial order as soon as the damages accrued is not in itself sufficient to compel denial of a motion

to amend during trial. Union Interchange, Inc. v. Parker (1960), 138 Mont. 348, 357 P.2d 339. While Rule 16, M.R.Civ.P., states that the pretrial order is to control the subsequent course of action, it further provides for modification at the trial.

Appellant is in no position to complain of a denial of due process since he made no motion for a continuance to enable him to defend against Keaster's claim for damages. Union Interchange, supra, and Clack v. Clack (1935), 98 Mont. 552, 41 P.2d 32.

With regard to the second issue, appellant relies upon section 27-1-415(1), MCA, which provides:

> "Specific performance cannot be enforced against a party to a contract . . .
>
> "(1) if he has not received an adequate con-sideration for the contract."

It is argued that five dollars is not adequate consideration for a contract that "ties up" land worth $200,000 for one year. This argument, however, distorts the facts. The option recited con-sideration of five dollars and other valuable consideration. The buyers' efforts to obtain an FHA loan expressly constituted part of the consideration. The option was irrevocable for six months, after which the appellant could have revoked by giving written notice.

In support of his argument, Appellant Bozik cites Rude v. Levy (1908), 43 Colo. 482, 96 P. 560, wherein it was held that consideration of one dollar was inadequate for an option to purchase land worth $900. We decline to follow this view. The parties, from equal bargaining positions, agreed upon the amount of consideration which they deemed sufficient to support the option. In the absence of evidence of fraud, if the purchase price for the land is adequate, even nominal consideration is adequate to support an option. Brooks v. LeGrand (Okla. 1967), 435 P.2d 142. See also Honeyfield v. Lambeth (Mo.App. 1975), 519 S.W.2d 342; Board of Control of Eastern Michigan Univ. v. Burgess

(1973), 45 Mich.App. 183, 206 N.W.2d 256; Allen v. Rakes (1971), 359 Mass. 1, 267 N.E.2d 628. The consideration recited by the option was sufficient to create a valid contract as well as adequate to allow the equitable remedy of specific performance.

Appellant next contends that the contract was not sufficiently complete and definite to be afforded the remedy of specific performance. Section 27-1-412(6), MCA, provides:

> "The following obligations cannot be specifically enforced:
>
> " . . .
>
> "(6) an agreement the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable."

Appellant Bozik asserts that the option was deficient for two reasons. First, he asserts that the use and occupancy of the house and garage or the exclusion of all the buildings was a material element left out of the contract. Second, it is asserted that the failure to specify a date for the down payment, the annual payments and the commencement of interest is fatal. On the other hand, the respondent contends that all the material elements of the contract are included and that any terms not included in the contract are collateral.

It must be noted at the outset that the option contract as written and signed by the parties contains no ambiguity and is sufficiently definitive to be capable of specific enforcement when one looks solely to the four corners of the instrument. The option contract contains a legal property description, expresses the consideration for the grant of the option, states the terms for a revocation, provides the time in which the option is exercisable, reveals the purchase price including the amount of down payment and annual payment, and states the interest rate. In addition the contract states that it includes a full statement of any reservations or exceptions and further has left blank a clause that states "Insert here conditions peculiar to this particular transaction."

In his counterclaim, Appellant Bozik sought reformation of

- 8 -

the contract to include a reservation of the farm house, garage and other outbuildings together with the land upon which the buildings are located. He alleged that by mutual mistake and inadvertence this material part of the contract between the parties was omitted from the writing.

At trial the testimony concerning the parties' intentions with regard to the buildings was conflicting. Keaster testified that during the negotiations prior to the execution of the option, the parties agreed that Bozik was to have the right to use the house and garage for as long as he wanted to live there. He understood the house and garage were not to be excluded from the sale, but Bozik would have "something like" a life estate. Bozik testified that prior to executing the option he had told Keaster the buildings were not for sale. His testimony also revealed that he was under financial pressures to sell the property, and that those pressures had diminished subsequent to the date of the option agreement. By September of 1977, Bozik no longer wanted to sell any of his property.

On the basis of the evidence, the trial court found that the parties had reached a mutual understanding that Bozik would be allowed to use the house and garage for as long as he desired. According to Rule 52(a), M.R.Civ.P.:

> " . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

There is sufficient evidence to support the finding of the trial court.

Without stating specifically that it was doing so, the trial court reformed the contract to reflect the intentions of the parties as it found them to be at the time the contract was executed. When by mutual mistake the agreement of the parties is not contained in the written instrument, the instrument may be reformed so as to express that intention. Section 28-2-1611,

MCA. The trial court did not reach beyond the evidence to supply a term not agreed upon by the parties. The evidence showed that the parties had a general understanding that Bozik would be allowed to remain in his home, but they had not determined whether Bozik was to have a life estate or some other interest. Both parties believed they could make the necessary changes in the documents at the time of closing. However, since the appellant refused to honor the option when it was exercised, the proposed contract for deed was not finalized and executed. As a result the oral agreement was not reduced to writing. It was within the equitable power of the trial court to correct this mistake by reforming the contract, and then specifically enforcing it. Section 28-2-1614, MCA. The contract as reformed was sufficiently definite and complete with regard to the subject matter to allow specific performance.

Appellant further contends the option was incomplete in that it failed to specify dates for the down payment, the annual payments, and the commencement of the interest on the unpaid balance. The option contract as finalized by the parties included the following term:

> "The total purchase price for said property is Two Hundred Thousand Dollars; said amount payable . . . $56,000.00 as a down payment; balance of $144,000.00 on a contract for deed, payable at the rate of $12,554.57 per annum for the term of 20 years. Interest at 6% per annum. Copy of the proposed contract attached hereto."

It is clear from the proposed contract for deed that the parties contemplated the making of the down payment on the date the contract was executed, with interest to commence on that date. The date supplied by the proposed contract for the annual payments was December 1 of each year, commencing in 1978. The buy-sell agreement tendered at the time of the attempted exercise of the option provided that possession of the property was to be delivered on April 15, 1978, which was the end of the option period.

The fact that these terms were not specifically expressed in the option contract does not render the option unenforceable. It is well settled that absolute certainty in every detail is not a prerequisite for specific performance. Gropp v. Lotton (1972), 160 Mont. 415, 503 P.2d 661; Steen v. Rustad (1957), 132 Mont. 96, 313 P.2d 1014. Those matters which are collateral or which go to the performance of the contract are not essential and need not be expressed in the contract. Steen v. Rustad, supra; Johnson v. Elliot (1950), 123 Mont. 597, 218 P.2d 703. When the time of performance is not specified, a reasonable time will be implied. Section 28-3-601, MCA. The trial court has the inherent power to set up a schedule for the performance of the obligations and the commencement of interest. Rogers v. Relyea (1979), ____Mont.____, 601 P.2d 37, 36 St.Rep. 1706. These adjustments are necessary to implement the decree of specific performance.

The judgment of the District Court is affirmed, and the case is remanded for further orders specifically enforcing the contract consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

This cause was submitted prior to January 5, 1981.