No. 92-039

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

JEFFERY P. WELCH,

      Petitioner and Respondent,

  and

CAROLYN L. PHILLIPS,
f/k/a CAROLYN WELCH,

      Respondent and Appellant.

FILED

MAR - 9 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        John L. Hollow, Attorney at Law,
        Helena, Montana

    For Respondent:

        Gregory W. Duncan, Harrison, Loendorf
        & Poston, Helena, Montana


Submitted on Briefs:  August 27, 1992

Decided:  March 9, 1993

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On October 10, 1991, appellant Carolyn L. Phillips, formerly known as Carolyn Welch, was named primary residential custodian of the parties' three children by order of the First Judicial District Court, Lewis and Clark County. However, the court denied Carolyn's motion to amend the pleadings to conform to the evidence, and in a second order issued on December 30, 1991, denied Carolyn's request for attorney fees. From these judgments, Carolyn appeals. We affirm.

The following issues are before this Court:

1. Did the District Court abuse its discretion when it denied Carolyn's motion to amend the pleadings to conform to the evidence?

2. Did the District Court err when it did not award child support after modifying the custody order?

3. Did the District Court abuse its discretion when it denied Carolyn's request for attorney fees?

When Carolyn and Jeffery were divorced on December 15, 1989, after 19 years of marriage, the court approved a property settlement agreement which the parties had both signed. The agreement provided that Jeffery was to receive in excess of $100,000 in marital assets and Carolyn was to receive assets worth about $2000. The dissolution decree granted the parties joint custody of their three children--Errin, born April 16, 1975; Emily, born December 4, 1977; and Mary Ellen (Elleny), born June 22, 1981.

The residency of the children was to be shared as equally as possible and neither party was required to pay child support.

Shortly after the dissolution, when Carolyn remarried and moved to Georgia, Jeffery petitioned for permanent custody of all three children. On July 30, 1990, Jeffery and Carolyn entered into a negotiated agreement which gave Jeffery custody of the children during the school year and Carolyn custody during the summers and school vacations. The agreement provided for no child support payments, but stipulated that Carolyn would pay all transportation costs for the children to travel to and from Georgia during the times they would be with their mother.

Pursuant to this agreement, the children spent the remainder of the summer with Carolyn, but at the end of the summer she retained two of the girls in Georgia and repeatedly refused to return them to Jeffery. Finally, on September 13, 1990, Carolyn was ordered to return the children to Montana and to pay a fine of $500 a day. She was also sentenced to, and served, three days in jail. Thereafter, Jeffery petitioned the court for an order to show cause why Carolyn's future visitation should not be restricted and sought payment of child support from Carolyn. After several hearings, continuances, and substitutions of counsel, the matter went unresolved.

On April 5, 1991, Carolyn petitioned to set aside the 1990 custody agreement on the basis of duress, fraud, undue influence, and menace. Although Carolyn sought permanent custody of all three children, no request was made for child support in the pleadings.

3

Hearings on this motion were held on May 23, 24, 28, 29, and August 19, 20, and 21, 1991. Immediately after the hearings were completed, Carolyn filed a motion to amend the pleadings to conform to the evidence, and sought to have Jeffery held in contempt and to have the original dissolution decree set aside on the grounds that the property settlement agreement, on which the decree was based, was unconscionable.

During this same general time period, several events relating to the children transpired. The oldest daughter, Errin, was experiencing serious emotional difficulties in Helena which experts attributed partly to the people she was associating with, but also to problems stemming from the divorce. After an attempted suicide, she was hospitalized in a psychiatric care center in Helena for several weeks and thereafter, although technically in the custody of Jeffery, went to live with an aunt and uncle in Arkansas and began attending school there. Under the terms of the custody agreement, Errin went to visit her mother in Georgia during spring break in 1991. In direct violation of court orders, Carolyn has kept Errin in Georgia since that time and has never returned her to Jeffery. Apparently, when Jeffery realized Carolyn would not return Errin to Arkansas, he delayed sending the other girls to Georgia for the summer. In an order issued on June 7, 1991, Jeffery was required to send Emily and Elleny to Georgia, but the order specified that they were to be returned to Montana no later than August 15, 1991. Carolyn again violated this court order, and the two girls did not return to Montana until later in August.

4

On October 10, 1991, the District Court issued its findings of fact and conclusions of law in response to Carolyn's motions, and judgment was entered on November 20, 1991. The District Court modified the custody order and awarded residential custody to Carolyn during the school year, and to Jeffery during summers and school vacations. This decision was reached after the court considered the ages and wishes of the children, the evidence of each party's performance as a parent, and the importance of not separating the children. The court found that Jeffery was a caring and capable parent who provided a healthy and clean environment, but that Carolyn, when she was not manipulating the children, was a good mother and was more apt to be involved in the children's activities on a regular basis.

Prior to the change of custody, however, Carolyn was required to pay $3000 to the court for fines, Jeffery's attorney fees of $3040, and another $1500 as attorney fees for the children. The court further ordered that if Carolyn failed to return any of the children to Jeffery at the established vacation times, or during the summer, sole custody would immediately revert to Jeffery. Jeffery was ordered to assume all transportation costs to and from Montana in lieu of child support.

The court also denied Carolyn's motion to amend the pleadings to conform to the evidence, and therefore, did not set aside the 1989 separation agreement. Although the motion to set aside the July 30, 1990, custody agreement was now irrelevant, the court stated that it found no credible evidence to show that Carolyn did

5

not enter into the agreement voluntarily while represented by an attorney.

Finally, the court specifically stated that it was retaining jurisdiction over the matter to insure that Carolyn attempted no further manipulations which would interfere with Jeffery's relationship with his children, and to insure that the visitation schedule was complied with.

In response to the court's denial of her motion to amend the pleadings to conform to the evidence and to set aside the separation agreement as unconscionable, Carolyn filed a notice of appeal on December 18, 1991. On appeal, Carolyn also raised the issue of the court's failure to make an award of child support after granting her primary residential custody. Carolyn had previously filed a bill of costs on October 17, 1991, in which she argued that she was entitled to her attorney fees because she had prevailed on the custody issue. This request was denied in a December 30, 1991, order, which required each party to bear his and her own attorney fees. From this, and the October 10, 1991, orders, Carolyn appeals.

I.

Did the District Court abuse its discretion when it denied Carolyn's motion to amend the pleadings to conform to the evidence?

Carolyn contends the court erred when it denied her motion to amend the pleadings to conform to the evidence in regard to the original property distribution agreement because the original

6

agreement should have been declared unconscionable as a matter of law and was induced by fraud. In its order, the court concluded that the issue of whether the separation agreement was invalid should have been addressed prior to the hearings to allow all parties an opportunity to submit evidence, and that it would be unfair to permit Carolyn to raise such serious allegations at this point.

Whether a party is permitted to amend the pleadings to conform to the evidence pursuant to rule 15(b), M.R.Civ.P., is within the discretion of the trial court and this Court will not disturb that decision absent an abuse of discretion. *Glacier National Bank v. Challinor* (1992), 253 Mont. 412, 833 P.2d 1046; *Keaster v. Bozik* (1981), 191 Mont. 293, 623 P.2d 1376. In this case, after considering the fact that Carolyn could have raised these issues and submitted evidence prior to the hearings, and in light of certain representations that were made to the court during the hearings, we hold that the court did not abuse its discretion when it denied Carolyn's motion.

The record reveals that, during the hearings, when Carolyn's attorney raised a line of questions which referred to the circumstances surrounding the parties' agreement, the judge stopped the proceedings and asked the attorney specifically whether he was attempting to overturn the original decree. The response was no. We also note that, during the 1991 hearings, Carolyn reaffirmed statements made in 1989, at the time the divorce decree was entered, to the effect that she was fully apprised of the effect of

7

the agreement and wanted no assets from the marriage. In light of these facts, we find no abuse of discretion in the court's refusal to entertain consideration of this issue, particularly at a time when Jeffery would have been denied the opportunity to respond to Carolyn's allegations.

## II.

Did the District Court err when it did not award child support after modifying the custody order?

Carolyn also contends that the court erred by failing to award her child support when it completely modified the 1990 custody agreement. Carolyn argues that the provision in the order requiring Jeffery to pay transportation costs constituted an order "concerning child support." Relying on § 40-4-204, MCA, she maintains that the court was required to apply the uniform child support guidelines and establish an appropriate amount of child support in view of the new custody arrangement.

Section 40-4-204(3), MCA, provides that when a court issues or modifies an order concerning child support, the standards outlined in § 40-4-204(2), MCA, and the uniform child support guidelines, must be considered, and if no support order is made, the court must state its reasons for not doing so. We note, however, that this statute only applies when the issue of support is before the court.

In this instance, the issue of child support was not before the court--there was no request for support raised by either party in the pleadings that were being considered by the court, no testimony was adduced establishing a need for support, and no

8

evidence was offered concerning child support. Furthermore, in the proposed findings of fact and conclusions of law submitted by the parties after the trial, neither party addressed child support.

Because the issue of child support was not before the court, we find no error in the court's failure to make such an award.

### III.

Did the District Court abuse its discretion when it denied Carolyn's request for attorney fees?

Finally, Carolyn maintains that the court abused its discretion when it refused to order Jeffery to pay her attorney fees after she was named as primary residential custodian.

Section 40-4-110, MCA, provides that a court may, after considering the financial resources of both parties, order a party to pay reasonable costs and attorney fees to the other party in any dissolution or custody proceeding. When reviewing the discretion vested in the district court under this statute, this Court will not disturb a district court's findings on appeal if there is substantial evidence to support those findings. *In re Marriage of Hall* (1990), 244 Mont. 428, 798 P.2d 117.

In this instance, the court first noted that Carolyn failed to satisfy a showing of necessity which is a condition precedent to an award of attorney fees. *In re Marriage of Forsman* (1987), 229 Mont. 411, 747 P.2d 861. Carolyn failed to testify concerning her inability to pay the fees in question on numerous occasions when testimony would have been appropriate, and never demonstrated Jeffery's

9

ability to pay the fees requested. The court also noted that both Jeffery and Carolyn were responsible for the fact that excessive attorney fees had been incurred during this prolonged litigation, and as such, neither party should be responsible for paying the other's costs.

We have previously held that when a trial court refuses to award attorney fees, the underlying reasoning must be indicated in the findings of fact. *Forsman*, 747 P.2d at 864. In this instance, the court clearly set forth and substantiated its reasoning for not granting Carolyn's request. We hold that the District Court did not abuse its discretion when it refused to award attorney fees to Carolyn.

The decision of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

10

March 9, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John L. Hollow
Attorney at Law
44 W. 6th St.
Helena, MT  59601

Greg W. Duncan and John P. Poston
Harrison, Loendorf & Poston
2225-11th Ave., Ste. 21
Helena, MT  59601

Randi Hood, Esq.
L & C County Courthouse
228 Broadway
Helena, MT  59623

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy