No. 99-625

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 126

299 Mont. 499

6 P. 3d 956

SAM E. McDONALD, JR.,

Plaintiff and Respondent,

v.

ELBERT H. COSMAN and OLIVE LOCKIE,

Defendants and Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Susan P. Watters, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Robert C. Smith, Cavan & Smith, Billings, Montana

For Respondent:

Randolph Jacobs, Jr., and Michael K. Rapkoch, Felt, Martin, Frazier,

Jacobs & Rapkoch, Billings, Montana

Submitted on Briefs: April 13, 2000

Decided: May 9, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1 The Thirteenth Judicial District Court, Yellowstone County, granted Sam E. McDonald summary judgment and awarded him specific performance in this action to enforce a purchase option in a lease agreement. The lessors, Elbert H. Cosman and Olive Lockie, appeal. We affirm and remand with instructions.

¶2 The issue is whether the District Court erred in ruling that the terms of the option to purchase were sufficiently clear and unambiguous to compel specific performance.

¶3 In 1977, the predecessors in interest of the parties to this action entered into a twenty-five-year lease on real property in Bozeman, Montana. The lessee, Sam E. McDonald, constructed a Wendy's restaurant on the property.

¶4 The lease included a provision allowing McDonald a limited option to purchase the property. The option provision read:

> LESSOR hereby grants an option to purchase to LESSEE. Said option may only be exercised after February 1, 1998 and the option period shall expire sixty (60) days after that date. In the event LESSEE fails to exercise the option as provided below, LESSOR may sell the premises subject to the remaining term of this Lease. LESSEE shall exercise the option by giving LESSOR a written notice of intent to exercise on or before the 60th day following February 1, 1998.
>
> The purchase price of the land excluding buildings shall be established by three M.

A.I. appraisers. One of the appraisers shall be chosen by LESSOR, one by LESSEE, and the two appraisers so selected shall together select a third appraiser. The decision of the majority of the appraisers shall be binding and shall be considered as the decision of the three appraisers. In the event the appraisers or a majority of them cannot agree on the appraisal herein provided for within thirty (30) days after the third appraiser is selected, then LESSOR and LESSEE shall appoint new appraisers in the manner provided for the appointment of the original appraisers. The three appraisers so chosen shall promptly ascertain, appraise and determine the actual value of the premises. The findings of the appraisers shall be in writing and made in duplicate, one to be delivered to LESSOR and one to LESSEE. LESSOR and LESSEE shall pay one-half each of the appraisers' fees.

In the event LESSEE exercises the option, LESSEE shall pay the purchase price as determined above under the following terms:

(a) One-fourth of the purchase price is payable within sixty (60) days after the purchase price is determined by appraisal;

(b) The remaining balance of the purchase price shall be paid in equal yearly payments for ten (10) years. Interest shall accrue on the unpaid balance at 1% over the prime rate as established by The First National Bank of Minneapolis, Minneapolis, Minnesota, but in no event shall that rate be less than 9% per annum.

(c) Should LESSEE default on any payment of the purchase price and said default shall remain uncured for sixty (60) days, LESSOR shall be entitled to reclaim the premises and all prior payments shall be forfeited and applied as reasonable rental charges.

On October 10, 1997, McDonald informed Cosman and Lockie that he intended to exercise his option to purchase. Three appraisers chosen as required under the option provision gave their unanimous opinion that the property was worth $325,000. On January 30, 1998, McDonald informed Cosman and Lockie that he was prepared to purchase the property at that price. Cosman and Lockie refused to complete the transaction, resulting in this action to enforce the agreement.

¶5 On McDonald's motion for summary judgment, the District Court ruled that the option provision of the lease contains all material terms and is thus legally enforceable. The court

also ruled that the requirements of the option had been met. It therefore granted summary judgment and awarded specific performance to McDonald. Cosman and Lockie appeal.

## Discussion

¶6 Did the District Court err in ruling that the terms of the option to purchase the property were sufficiently clear and unambiguous to compel specific performance?

¶7 In determining whether a district court properly ordered summary judgment, this Court applies the same criteria as the lower court used in reaching its decision. *Hennen v. Omega Enterprises, Inc.* (1994), 264 Mont. 505, 508, 872 P.2d 797, 799. The moving party must establish the absence of genuine issues of material fact and that he is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

¶8 The remedy of specific performance is allowed when (1) the act to be done is in the performance of an express trust; (2) the act to be done is such that pecuniary compensation for its nonperformance would not afford adequate relief; (3) it would be extremely difficult to ascertain the actual damages caused by nonperformance; or (4) specific performance was specifically agreed to in writing. Section 27-1-411, MCA. Contracts for the sale of real property are specifically enforceable because "[i]t is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation." Section 27-1-419, MCA.

¶9 Cosman and Lockie correctly point out that specific performance can be had only in cases involving clear and specific agreements. Section 27-1-412(5), MCA. They argue that the option clause in their contract with McDonald is ambiguous and therefore is not subject to specific performance. They contend that the option clause represents only an "agreement to agree," and that a further contract between the parties was anticipated and is necessary if the option clause is to be enforced.

¶10 Cosman and Lockie rely on this Court's opinion in *Quirin v. Weinberg* (1992), 252 Mont. 386, 830 P.2d 537. In that case, this Court affirmed a district court ruling that the parties' discussions regarding a land trade were insufficient to create a contractual obligation. We stated that the sufficiency of acts to constitute part performance can be decided as a matter of law, and we noted the distinction between acts which truly constitute part performance and those merely undertaken "in contemplation of eventual performance." *Quirin*, 252 Mont. at 393, 830 P.2d at 541.

¶11Cosman and Lockie also rely upon this Court's opinion in *Henkel v. Hewitt Agency* (1983), 206 Mont. 303, 671 P.2d 582. In that case, the Court reversed a judgment granting specific performance of a buy-sell agreement for real property, on grounds that the agreement did not include terms specific and definite enough to be specifically enforced. The opinion noted that the agreed-upon monthly payments would not even cover the annual interest and that there was no provision for payment of the principal of the purchase price. Concluding that the option terms were so indefinite as to be without meaning unless they were rewritten, this Court stated, "Only where all the terms of the agreement are definite may a contract be specifically enforced." *Henkel*, 206 Mont. at 305, 671 P.2d at 583.¶

12 The facts of the present case are notably different from those in both of the above cases. Unlike the present case, *Quirin* involved no written contract; but only oral negotiations for a land sale. Unlike the option provision at issue in *Henkel*, the option provision in the present case explicitly provides for the payment of both principal and interest over a ten-year period.

¶13 Cosman and Lockie argue, nevertheless, that the option provision here is ambiguous in that it does not provide for whether there shall be ten equal yearly installment payments or ten payments of 1/10 of the principal plus the interest on the amount then remaining due. They also cite the absence of provisions setting the contemplated dates for the down payment and accrual of interest and the amount of the annual payments and interest.

¶14 *Keaster v. Bozik* (1981), 191 Mont. 293, 623 P.2d 1376, was another case in which this Court considered whether a contractual option provision for the purchase of real property was specific and definite enough to be enforceable by specific performance. It was argued that the failure to specify a date for the down payment, the annual payments, and the commencement of interest was fatal. Rejecting that argument, this Court ruled:

> [T]he option contract as written and signed by the parties contains no ambiguity and is sufficiently definitive to be capable of specific enforcement when one looks solely to the four corners of the instrument. The option contract contains a legal property description, expresses the consideration for the grant of the option, states the terms for a revocation, provides the time in which the option is exercisable, reveals the purchase price included in the amount of down payment and annual payment, and states the interest rate.

*Keaster*, 191 Mont. at 300, 623 P.2d at 1380. The Court stated that "[t]he fact that these terms [dates for the down payment, annual payments, and commencement of interest on the unpaid balance] were not specifically expressed in the option contract does not render the option unenforceable." *Keaster*, 191 Mont. at 302, 623 P.2d at 1381.

¶14 The option clause in the present case sets forth the time in which the option is exercisable, the method for calculating the purchase price and the interest rate, the method by which the purchase price shall be paid, and the parties' rights on default. We agree with the District Court that under *Keaster,* the option in the present case contains all the material terms to make the acts which must be done to purchase the property clearly ascertainable.

¶15 Cosman and Lockie complain that the option provision is vague and ambiguous in that it does not state who shall be responsible for paying property taxes and insurance during the time McDonald is purchasing the property, and it does not provide fully for forfeiture remedies. As the Court stated in *Keaster*, "absolute certainty in every detail is not a prerequisite for specific performance" and "[t]hose matters which are collateral or which go to the performance of the contract are not essential and need not be expressed in the contract." *Keaster*, 191 Mont. at 302, 623 P.2d at 1381. As a collateral matter, responsibility for taxes and insurance was not required to be addressed in the option clause as a prerequisite for specific performance. *Maxted v. Stenberg* (1975), 166 Mont. 460, 468, 534 P.2d 864, 869. We note that the lease agreement provides that McDonald will be responsible for paying these expenses during the term of the lease. It is reasonable therefore to infer that he shall be responsible for these payments during the purchase period, as well.

¶16 Cosman and Lockie's arguments do, however, illustrate the wisdom of this Court's mandate in *Keaster*, 191 Mont. at 302-03, 623 P.2d at 1381, that a court ordering specific performance of a land sale contract must set up a schedule for the performance of the obligations and the commencement of interest in order to implement its decree. When the time of performance is not specified, a reasonable time will be implied. Section 28-3-601, MCA. Before this legal action was brought, payments could reasonably have begun one year from the date of appraisal or one year from the down payment date. Because of the delay which has since ensued, those dates are no longer reasonable. ¶17 The District Court did not set up a schedule for the performance of the obligations and the commencement of interest in order to implement its decree. We conclude that in order to implement the decree of specific performance, this case must be remanded to allow the District Court to determine the date on which the initial payment shall be made and on which interest shall

commence, and the date on which subsequent yearly payments will be made.

¶18 Finally, Cosman and Lockie maintain that the method used for the appraisal of the property was not standard and that therefore the purchase price is not clear and unambiguous. The three appraisers used the sales comparison approach in valuing the land.

¶19 McDonald points out that he bore all the expense of making improvements to the property. The District Court concluded that it would be unjust to include the value of those improvements in the purchase price he is to pay for the property. We agree. As to the method used for the appraisal, the two appraisers originally selected by the parties each averred that they conducted their individual appraisals in conformity with professional appraisal standards and practices. The third appraiser gave a detailed explanation by letter of the reasoning behind the subsequent unanimous conclusion that the market value of the land was $325,000. Cosman and Lockie's criticism of the appraisal method used is not persuasive.

¶20 In sum, the record establishes that the option in the present case is legally enforceable and that McDonald satisfied the terms and conditions of the option. We affirm the District Court's decision awarding him specific performance, but remand with instructions that the court must set up a schedule for the performance of the obligations and the commencement of interest in order to implement its decree of specific performance.

/S/ J. A. TURNAGE

We concur:

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER