No. 12808

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

ROY A. MAXTED,

Plaintiff and Appellant,

-vs-

STANLEY STENBERG,

Defendants and Respondents.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

Grant and Heard, Columbus, Montana
Richard W. Heard argued, Columbus, Montana
Berger, Anderson, Sinclair & Murphy, Billings,
Montana
Richard W. Anderson argued, Billings, Montana

For Respondents:

Huppert and Swindlehurst, Livingston, Montana
Joseph T. Swindlehurst argued, Livingston, Montana
O. J. Paulson, Big Timber, Montana

---

Submitted: January 13, 1975

Decided: APR 2 5 1975

Filed: APR 2 5 1975

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court, Sweet Grass County, denying plaintiff specific performance for an alleged breach of contract because of defendants' failure to sell their ranch to plaintiff after execution of a buy-sell agreement.

On September 23, 1970, defendants Stanley and Ann Stenberg, hereinafter referred to as sellers, listed their ranch consisting of approximately 315 acres located west of Big Timber, Montana, for sale with real estate broker Harold Mjolsness, hereinafter referred to as realtor, for the price of $70,000. The listing expired March 1, 1971. With the consent of sellers, the realtor continued to show the property to interested parties but was unable to find a buyer.

In the summer 1972, plaintiff Roy Maxted, a resident of the state of California, hereinafter referred to as purchaser, decided to settle in Montana and purchase a ranch. He inquired of the realtor and was advised that sellers' ranch was on the market. After negotiations, a buy-sell agreement was executed on July 7, 1972, by purchaser and realtor, and by sellers on August 3, 1972. The agreement provided in part:

1) The purchaser pay a $1,000 deposit as earnest money and as part payment of the purchase price of $75,000. The balance in the amount of $74,000 to be paid $1,000 on or before August 7, 1972, and additional payments each month until purchaser had paid a total of $15,000, on or before January 1, 1973. Purchaser thereafter to make annual payments of $6,000 which will include interest at the current rate charged by the federal land bank for the duration of the contract a period of fifteen years, and, at that time the unpaid balance will be due and payable in one sum.

2) A legal description of the land purchased, including all recorded water rights; sellers to retain one-half of the existing mineral rights and purchaser the remaining one-half, until final payment. Upon final payment sellers agreed to release all mineral rights to purchaser.

3) All irrigation fixtures, heating fixtures and equipment, including water heaters etc., were to be left as part of the property purchased.

4) Sellers at their expense shall furnish an abstract of title or at their option title insurance showing merchantable title vested in sellers, free and clear of all liens and encumbrances, with no exceptions.

5) The real property was to be conveyed by warranty deed and personal property by bill of sale, free and clear of all encumbrances, except zoning reservations in the federal patent.

6) Sellers shall pay all taxes for 1972 and prior years. Purchaser shall pay all taxes and assessments thereafter. Encumbrances may be paid out of purchase price by sellers at the date of closing.

7) Time is of the essence and purchase rights are not assignable without written consent of sellers.

8) Sellers agreed to remove all old machinery before possession date.

9) Sellers agree to transfer present private leases [including the description] to purchaser at the time of closing sale.

10) Harold Mjolsness is agent for sellers and sellers agree to convey to purchaser the property described and on the terms contained in the agreement. Sellers agree to pay their agent $2,500 for services rendered in the transaction, and further provided:

"* * * I/we authorize said agent to pay out of the cash proceeds of sale the expense of furnishing evidence of title, of recording fees and revenue stamps, if any, as well as any encumbrances on said premises payable by me at/or before closing.* * *"

There was no provision in this buy-sell agreement to enter into any other contract agreement at any future time. The agreement, in fact, recites as it relates to purchaser and oral promises, that the purchaser enters into this agreement in full reliance upon his independent investigation and judgment. There are no verbal or other agreements which modify or affect the buy-sell agreement.

Following the execution of the buy-sell agreement purchaser sold his home and liquidated his construction business in California.

The realtor did not use his regular attorney but hired Mr. Richard Heard of Columbus, Montana, to prepare a contract for deed, because relator's regular attorney was not satisfactory to sellers.

In November 1972, purchaser returned to Montana and met with sellers and relator in Mr. Heard's law office to discuss terms and refinements to be included in a formal contract for deed to be prepared by Heard. At this meeting purchaser offered to pay the remaining balance on the buy-sell agreement, but was requested by sellers to withhold payment until after January 1, 1973, because of sellers' tax problems for 1972. In court, sellers did not directly admit making this request, but neither did they deny it completely. They allowed as to the tax problem, but maintained the money could have been placed in escrow. In any event, the parties agreed the new date for payment of the $14,000 to be January 5, 1973.

At this point the parties were left alone by the attorney to discuss and agree on the terms of the proposed contract. After an hour he returned to the conference room and discussed the oral agreement. Thereafter, he prepared a contract for deed, submitted to the purchaser in California where it was signed by him on December 11, 1972.

In order to construct a home on the ranch, purchaser needed five acres released to him to satisfy the financial arrangements for the home. Sellers refused to sign the contract for deed because

the provision granting the five acres to purchaser on closing was unacceptable to them. Purchaser was so informed by telephone on December 9, 1972. An amendment to the contract was prepared, but sellers continued to object to any release of five acres prior to payment of a more substantial sum than the $15,000 down payment.

At this point there were several telephone calls between relator and purchaser concerning the $14,000 due on January 5, 1973, under the buy-sell agreement. Purchaser testified he had nothing in hand and no title report, etc., and therefore he chose to come to Montana and close the matter personally, but did not arrive in time to make the payment on January 5, 1973.

On January 8, 1973, sellers requested realtor to notify purchaser "to get some money up here so that I know they were going to go through with this". Purchaser, driving a truckload of furniture, arrived in Montana on January 19, 1973. He tendered a cashier's check for $14,000 to sellers' agent, who accepted the check although sellers apparently considered "the deal was off."

Purchaser and realtor testified that on January 19, 1973, the parties were to meet in realtor's office but sellers excused their absence due to cattle being out, etc. Purchaser and realtor finally went to the ranch late in the afternoon of the same day and sellers explained they had to see about financing in Bozeman and could not close the deal at that time. Sellers maintain they told purchaser and realtor the "deal was off", yet, sellers came to another meeting the evening of the 19th at realtor's office. Another conference was had then between the parties, but no positive results came of the meeting.

Purchaser returned to California and had a written demand served on sellers, which was refused. Subsequently purchaser brought the instant action for specific performance which was tried to the court sitting without a jury. The court denied purchaser relief and in its conclusions of law stated in part:

## "I

"That the Buy-Sell Agreement constituted an agreement to enter into a contract in the future and was not an enforceable contract.

## "II

"That, in any event, the Plaintiff abandoned the Buy-Sell Agreement by failing to pay the balance of the down payment as initially agreed; by insisting upon the release provision, which materially changed the agreement; and, finally, by failing to pay the down payment or to come to Montana to resolve matters on or before January 5, 1973."

On appeal, the controlling issues are:

(1) Was the buy-sell agreement a binding and enforceable contract?

(2) If so, does the purchaser's breach prevent recovery?

(3) Was the buy-sell agreement abandoned by the purchaser?

The realtor involved in this transaction was the agent of sellers. His agency is express and contained in the contract document. His authority to disburse funds is expressly given and he would have apparent authority to receive the purchase price. 12 Am Jur 2d Brokers §81, p. 833. His agency expressly went beyond the mere act of finding a purchaser. This agency had not been revoked or expired during the times pertinent to this matter. His agency status was not questioned in the record.

Sellers cite Dineen v. Sullivan, 123 Mont. 195, 213 P.2d 241, as principal authority in support of their argument that the nine essential elements in Dineen that were not included in the memorandum in that case, constituted some kind of guide as to the requirements necessary to have an enforceable memorandum. They ask this Court to make these comparisons with the buy-sell agreement in the instant case and somehow use the proposed contract for deed here as a control reference.

Sellers have misread Dineen and the holding therein. Dineen is distinguishable in several respects. It involved an admittedly bland agreement to sell and purchase real property which contained an agreement to enter into a formal contract containing the terms agreed upon by the parties and designated an attorney to prepare the formal contract document.

In <u>Dineen</u> the amended complaint plead eight essential elements of the <u>oral</u> agreement that were reduced to writing and contained in the memorandum. In the complaint in <u>Dineen</u> plaintiff plead nine essential elements orally agreed upon but not contained in the memorandum agreement. The trial court sustained a "demurrer" to the complaint and its judgment was appealed. This Court merely reviewed the law of contracts in Williston on Contracts 2d Ed.; specific performance contained in Pomeroy's Work Specific Performance of Contracts, 3rd Ed.; Restatement of the Law of Contracts; and case authority. It then concluded that every written contract presupposed a prior verbal agreement, the writing is the evidence of that agreement and must contain the essential executory oral agreements of the parties or it will not be enforced. The Court held that the complaint on its face demonstrated the memorandum did not contain all of the parties' essential verbal agreements therefore the complaint was defective on its face and subject to demurrer. The Court sustained the judgment of the trial court and in essence the cause was dismissed.

The agreements of the parties contained in or left out of the memorandum in <u>Dineen</u> were never discussed in the context of requirements to constitute a valid or an enforceable contract in specific performance. The question there decided was ---Did it contain the essential elements of the verbal agreements of the parties in that case?

On this point in the instant case, sellers in their answer and counterclaim did not plead this defense to the buy-sell agreement. They plead bad faith and fraud in the November 1972 tender. They considered the agreement <u>terminated, and "did enter into new negotiations for the sale of the same property * * *.</u> " (Emphasis ours).

The "new negotiations" refer to the contract for deed negotiations. They allege they did not sign the contract for deed because it contained a five acre release not agreed to by the sellers. Sub-

sequently sellers tried their case on the same theory. It would be somewhat difficult on appeal to adopt the rationale of Dineen, even if permitted under Rule 8(c), M.R.Civ.P.

A much better reasoned case for the proposition we must face to determine if the buy-sell agreement in this cause is an enforceable contract is Steen v. Rustad, 132 Mont. 96, 106, 313 P.2d 1014, cited by both parties.

Steen concerns a lease with option to buy containing two plans of payment, one for rent and the other for down payment to exercise an option to purchase. If the down payment plan was selected a contract would be drawn at that time and contain the terms stated in the memorandum in the lease-option agreement. Those terms were in less detail than those contained in the buy-sell agreement under consideration here. The Court in Steen first draws the distinction that to be enforced in equity a contract must be one wherein the parties intend to set down the essential elements of a contract for the purchase and sale of realty and not a contract to agree on these terms in the future. Then, assuming it is intended to be a binding contract and a more formal agreement is contemplated in the future, equity will grant specific performance of the less formal instrument. The Court then went on to say:

"* * * It is of course well-settled that a contract to be specifically enforceable must be complete and certain in all essential matters included within its scope. Nothing must be left to conjecture or surmise, or be so vague as to make it impossible for the court to glean the intent of the parties from the instrument, or the acts sought to be enforced. [Citations]

"It is equally well-settled that absolute certainty and completeness in every detail is not a prerequisite of specific performance, only reasonable certainty and completeness being required. Those matters which are merely subsidiary, collateral, or which go to the performance of the contract are not essential, and therefore need not be expressed in the informal agreement. [Citations]

" * * *

"* * *The defendant stressed the fact there was no mention of taxes, interest, security, acreage to be planted or time of performance. However there are many cases holding that these are all collateral matters which are not essential to the validity of the contract. [Citations]" (Emphasis ours).

- 8 -

A close examination of the buy-sell agreement involved here reveals, by its terms, that all of the agreed provisions are contained therein. The conduct of the parties, the admissions in the pleadings, the trial record, and the fact the agreement was prepared by the sellers' agent leaves no doubt that it contained the oral agreements of the parties and is complete and certain in all essential matters, as required under Montana law, and is therefore enforceable by specific performance.

Issues 2 and 3 concern alleged abandonment by the purchaser and purchaser's alleged breach in so far as it would prevent recovery based on not having made final payment on or before January 5, 1973, "time being the essence of the contract".

Reviewing the conduct of the parties: keeping in mind that purchaser had a problem liquidating his business and selling his home in California, that purchaser promptly proceeded to do so after execution of the buy-sell agreement. He came back to Montana in November 1972 and was led to believe that these negotiations would lead to a more formal contract for deed. At that time purchaser offered to pay the entire $14,000 but consented to another date to accommodate sellers. It was conceded at trial that purchaser had the ability to pay. Purchaser returned to California and executed there the new contract when it was presented. Purchaser was then advised the sellers refused to enter into the contract for deed based on the five acre release provision. Sellers' agent assured purchaser the contract could be and would be amended, and an agreement would be reached. Thereafter, purchaser was pressed to make the $14,000 payment due under the only contract he had, the buy-sell agreement. Purchaser complained he had no title assurance and was somewhat leery. He decided to come to Montana with a new truck, purchased for the ranch operation and loaded with furniture, to personally close the deal. All parties knew purchaser was enroute and purchaser was never advised not to proceed, or that the contract was considered cancelled by sellers.

There is a dispute as to what was said at the ranch the day the parties met there, but they continued to negotiate the same evening on the contract for deed. Purchaser had alreay tendered the $14,000 cashier's check to realtor and it was accepted by him. No instructions to return the money were given realtor by sellers until purchaser had returned to California.

There is no evidence in the record that purchaser ever intended to abandon the contract nor for that matter the sellers. Sellers kept pressing for payment which resulted in bringing purchaser to Montana, again. The record reveals realtor had difficulty with sellers when sellers were asked to produce merchantable title evidence. As a matter of fact, neither sellers nor their agent ever produced evidence of good title for purchaser, even though the contract required sellers to furnish such evidence.

Considering purchaser's change of position to his detriment, and constant urging and assurances given by sellers' agent and sellers' failure to advise purchaser to the contrary or put purchaser on notice, sellers would be estopped not to comply with the contract. This would be particularly true after accepting payment. 17 Am Jur 2d, Contracts § 9.

So far as the late payment is concerned Brown v. Griffin, 150 Mont. 498, 505, 436 P.2d 695, examined a contract with the identical wording on furnishing of title by the seller and the identical language "Time is of the essence". It further concerned making of a final payment under the buy-sell agreement. It is identical to the instant case insofar as language is concerned. In Brown the Court explained that under a contract which does not expressly provide for the time of performance of sellers' agreement to furnish an abstract or title insurance, a reasonable time will be implied. The Court then said:

> "* * * What is a reasonable time in a given case depends upon the totality of the surrounding circumstances. As a general rule a contract that an abstract showing merchantable title shall be furnished without specifying a particular time is construed to require such abstract as a condition precedent to any liability of the purchaser to pay for the property. (55 Am.Jur., Vendor & Purchaser, § 293, p. 732, and 310, p. 742; 91 C.J.S. Vendor & Purchaser, § 100(b)(1), pp.990,991.)* * *".

A totality of the surrounding circumstances in the instant case would be open to no other suggestion than the late payment was excused under Brown, aside from a waiver of late payment by acceptance of the payment by the sellers' agent.

Therefore, with a finding of an enforceable buy-sell agreement, never abandoned, and late payment excused, the judgment of the trial court is reversed and the buy-sell agreement is ordered enforced by a decree of specific performance.

The contract for deed was never agreed upon or executed and it is of no force or effect.

The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.