FILED

06/02/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0272

DA 25-0272

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 119

SPENCER MELBY, an individual and
COLETTE MELBY, an individual,

> Plaintiffs and Appellees,

v,

BRUCE DOERING, an individual and
KIM DOERING, an individual,

> Defendants and Appellants,

and

DAWN MADDUX, an individual, WESTERN
FRONTIER, LLC, d/b/a ENGEL & VÖLKERS
WESTERN FRONTIER, a Montana Limited
Liability Company,

> Defendants and Appellees.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-21-671
Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

> For Appellants Bruce Doering and Kim Doering:

> David B. Cotner, Kyle C. Ryan, Taylor N. Eisenzimer, Cotner Ryan
> Blackford, PLLC, Missoula, Montana

> For Appellees Spencer Melby and Colette Melby:

> Robert K. Baldwin, Andrew N. Davis, Baldwin Law, PLLC,
> Bozeman, Montana

Submitted on Briefs: March 25, 2026

Decided:  June 2, 2026

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Spencer and Collette Melby sued Bruce and Kim Doering in the Fourth Judicial District Court when their agreement to purchase the Doerings' property, known as Marshall Mountain, fell through. Doerings challenge the District Court's grant of partial summary judgment in favor of Melbys on their breach of contract claim. The issue on appeal is whether the parties' failure to agree to the final terms for seller financing precluded the formation of an enforceable contract under the terms of an already executed Buy-Sell Agreement. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 5250 Marshall Canyon Road, locally known as and herein referred to as Marshall Mountain, comprises 156 acres in Missoula County, including several structures, improvements, and fixtures related to a retired commercial ski operation. Doerings, who owned the property since 1993, listed Marshall Mountain with Dawn Maddux of Engel and Völkers real estate brokerage firm. On February 22, 2021, Doerings and Melbys entered into a Buy-Sell Agreement for the conveyance of Marshall Mountain. The Buy-Sell provided, among other things, that Melbys would purchase Marshall Mountain for $2,150,000 through conventional financing, with a closing date of June 4, 2021.

¶3 The Buy-Sell also contained several contingencies. Under the Title Contingency, performance was conditioned on Melbys' receipt and approval of the preliminary title commitment ("Commitment") for Marshall Mountain. The Commitment enumerated specific exceptions to the offered title insurance policy, including three discrete easements:

3

(1) for a private road, (2) for a lawn sprinkler system, and (3) for an existing driveway. The Commitment did not disclose any licenses or easements for public access. Melbys approved the Commitment, which became effective March 12, 2021.

¶4 The Financing Contingency initially required Melbys to obtain conventional financing by the closing date or the Buy-Sell would terminate. On May 3, Doerings and Melbys amended the Financing Contingency by entering an Amendment to Agreement between Parties for Existing Terms and Conditions ("Amendment"), agreeing that the Melbys and Doerings would enter a seller-financing arrangement. The Amendment modified the Purchase Price and Terms provision, changing financing from "Conventional" to "Other" and adding the following language:

> Seller shall offer seller financing with contract for deed with the following terms:
>
> 20% downpayment, 6% interest amortized over 25 years with balloon payment/payoff due in 7 years from closing. There is no pre-payment penalty. Buyer shall pay cost of writing contract for deed, seller shall pay opening escrow fees, buyer shall pay monthly escrow fees. Parties shall mutually agree upon longer term escrow agency if Western Title and Escrow cannot provide escrow services. Final contract for deed to be mutually agreed upon by both parties.

¶5 The Amendment did not amend any other provision. It expressly incorporated by reference all other terms and conditions of the Buy-Sell, which included the closing date, the Title Contingency, and these pertinent provisions:

> **CONDITION OF TITLE:** . . . . Seller agrees that no additional encumbrances, restrictions, easements or other adverse title conditions will be placed against the title to the Property subsequent to the effective date of the [Commitment] approved by the Buyer.

4

**ENTIRE AGREEMENT:** This Agreement, together with any attached exhibits and any addenda or amendments signed by the parties, shall constitute the entire agreement between Seller and Buyer, and supersedes any other written or oral agreements made between Seller and Buyer. This Agreement can be modified only in writing, signed by the Seller and Buyer.

¶6 On May 6, 2021, Zane Sullivan, an attorney for Dawn Maddux, delivered the initial draft of the Contract for Deed to Doerings. J.R. Casillas, Doerings' attorney, forwarded the draft to Doerings with minor changes. On May 18, Bruce Doering sent to Sullivan another revised draft, lengthening the Contract for Deed from eleven to twenty-one pages and adding over twenty new terms and conditions—including a Public Access provision—that were not included in the Buy-Sell or in the Amendment.

¶7 On May 21, Melbys' attorney, Del Post, received further revisions from Casillas, including to Doerings' Public Access provision. The updated provision provided:

Due to the historic use of the property by the public, sellers are granting the following listed groups, which includes but is not limited to, by Zootown Derailleurs, the National Interscholastic Cycling Association, MT Alpha Cycling, MTB Missoula, and MTCX for practice, races and other hosted events, an easement for any part of the 156 acres. This easement may be rescinded by sellers at any time during the life of this contract.

¶8 That same day, Post responded to Casillas. Post remarked that the revised Contract for Deed was atypical and that he tried to be as "surgical as [he] could with [his] suggested edits." Post expressed reservations about the added easement. He referenced the Condition of Title provision and asserted that "[g]ranting an easement to third party groups over virtually any and all parts of the property totally changes the nature and character of what [Melbys] contracted to buy." The following day, Casillas informed Post that Doerings

refused Melbys' proposed revisions to the Contract for Deed and were terminating the Buy-Sell.

¶9 On May 26, Melbys sued Doerings for specific performance under the terms of the Buy-Sell. Melbys later amended their complaint, adding Maddux and Engel and Völkers as defendants and praying for compensatory and punitive damages instead of specific performance. Relevant to the issue on appeal, Melbys claimed that Doerings materially breached the Buy-Sell's express terms and the implied covenant of good faith and fair dealing. On January 16, 2024, Melbys and Doerings filed cross-motions for summary judgment on Melbys' breach of contract claim. Central to these motions was whether the Buy-Sell and the Amendment together constituted an enforceable contract.

¶10 On April 29, 2024, the District Court granted in part and denied in part Melbys' motion for partial summary judgment. It reasoned that the Buy-Sell and the Amendment contained all essential elements for the transfer of real property. Notwithstanding Doerings' argument that the Contract for Deed contained material terms on which the parties needed to agree, the District Court determined that the Buy-Sell and Amendment, together, constituted an enforceable contract, that Doerings breached the contract by failing to close, and that Melbys were damaged as a result. The court concluded, however, that disputed material facts remained under Melbys' claim for the breach of implied covenant of good faith and fair dealing and denied Melbys' motion on that claim. Doerings moved to certify the court's order on the breach of contract claim as immediately appealable under

M. R. Civ. P. 54(b). The District Court granted Doerings' motion. This Court accepted certification in accordance with M. R. App. P. 6(6) and now considers Doerings' appeal.

## STANDARDS OF REVIEW

¶11 This Court reviews a district court's summary judgment determination de novo, applying M. R. Civ. P. 56. *Hanson v. Town of Fort Peck*, 2023 MT 208, ¶ 15, 414 Mont. 1, 538 P.3d 404 (citation omitted). Courts may grant summary judgment when there exists no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). Evidence is viewed in the light most favorable to the nonmovant. *Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 389 (citation omitted). The existence and interpretation of a contract are questions of law that we review for correctness. *Kluver v. PPL Mont., LLC*, 2012 MT 321, ¶ 19, 368 Mont. 101, 293 P.3d 817 (citing *Hurly v. Lake Cabin Dev., LLC*, 2012 MT 77, ¶ 14, 364 Mont. 425, 276 P.3d 854).

## DISCUSSION

¶12 When a contract is clear and unambiguous, a court must enforce the contract as written. *Schwend v. Schwend*, 1999 MT 194, ¶ 38, 295 Mont. 384, 983 P.2d 988 (citation omitted), *cited in GRB Farm v. Christman Ranch, Inc.*, 2005 MT 59, ¶ 10, 326 Mont. 236, 108 P.3d 507. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. Likewise, "[s]everal contracts relating to the same matter, between the same parties, and made as parts of substantially one transaction are to be taken together."

Section 28-3-203, MCA. Contracts "should be read together, each clause helping to interpret the others, where particular clauses of the agreement are subordinate to the general intent of the contract." *Lewis & Clark Cnty. v. Wirth*, 2022 MT 105, ¶ 16, 409 Mont. 1, 510 P.3d 1206 (brackets omitted; internal quotations omitted) (citing §§ 28-3-202, -307, MCA). If possible, a court should interpret a contract to give effect to the lawful and mutual intent of the parties at the time of contracting as can be ascertained from the writing. *Mary J. Baker Rev. Tr. v. Cenex Harvest States, Coop. Inc.*, 2007 MT 159, ¶ 21, 338 Mont. 41, 164 P.3d 851 (citing §§ 28-3-301, -303, 1-4-103, MCA).

¶13     "The essential elements of a breach of contract claim are: (1) a valid and enforceable contract; (2) breach of an express or implied contract duty or obligation; and (3) resulting contract damages." *Kostelecky v. Peas in a Pod LLC*, 2022 MT 195, ¶ 41, 410 Mont. 239, 518 P.3d 840 (citations omitted). A valid and enforceable contract consists of the four essential elements: "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Hurly*, ¶ 17 (citing § 28-2-102, MCA).

¶14     Doerings argue that there was no breach of contract because the parties never agreed to the final terms of the Contract for Deed and thus no valid contract exists. The parties concede that the first, third, and fourth elements essential to contract formation have been met. On the second element, Doerings suggest that a conventionally financed Buy-Sell Agreement differs substantially from a seller-financed Contract for Deed. As such, mutual agreement to the Contract for Deed's final terms were a condition precedent to contract

8

formation as expressed in the Amendment's language that "[f]inal contract for deed to be mutually agreed upon by both parties." They also suggest that the Contract for Deed would need to contain material terms that were central to the parties' agreement.

¶15 When parties enter an informal agreement and express the intention to create a more formal superseding contract, the independent enforceability of the informal agreement depends on (1) whether it satisfies the essential elements required for contract formation, *Hurly*, ¶ 17 (citation omitted); (2) whether it contains all of the parties' agreed-to material terms, *Kluver*, ¶¶ 36-37 (citing *Hurly*, ¶¶ 7, 21-22; *Steen v. Rustad*, 132 Mont. 96, 104, 313 P.2d 1014, 1019 (1957)); and (3) whether the parties did not clearly and unambiguously require the execution of a formal superseding agreement as a condition precedent to contract formation. *Hanson*, ¶ 27 (citations omitted). The parties' intentions are those that are revealed and agreed to during negotiations. *Kluver*, ¶ 33 (citing *Hetherington v. Ford Motor Co.*, 257 Mont. 395, 399, 849 P.2d 1039, 1042 (1993)). A contract binds a party if the party "has manifested assent to the agreement's terms and has not manifested an intent not to be bound by that assent." *Kluver*, ¶ 33 (citing *Lockhead v. Weinstein*, 2003 MT 360, ¶ 12, 319 Mont. 62, 81 P.3d 1284); *see also Hetherington*, 257 Mont. at 399, 849 P.2d at 1042. "In other words, if parties unconditionally consent to an agreement, they are bound." *Kluver*, ¶ 33 (citation omitted). During negotiations, parties may condition rights and duties on "a specific uncertain act, event, or circumstance." *Hanson*, ¶ 31 (citing *Davidson v. Barstad*, 2019 MT 48, ¶¶ 20-23, 395 Mont. 1, 435 P.3d 640); § 28-1-401, MCA. Conditions are generally disfavored and "will not be found unless there is unambiguous

9

language indicating that the parties intended to create a conditional obligation." 13 Richard A. Lord, *Williston on Contracts*, § 38:13, 473 (4th ed.); *see also Hanson*, ¶ 27.

¶16    A condition precedent is an occurrence or event upon which the accrual of a right or the performance of an act or forbearance depends.  Section 28-1-403, MCA.  "A condition precedent can apply to either the formation of the contract, which predicates the existence of the contract on the satisfaction of the condition, or the performance of the contract obligation, which predicates the duty to perform on satisfaction of the condition." *Bender v. Rosman*, 2023 MT 140, ¶ 14, 413 Mont. 89, 532 P.3d 855 (citing *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls, Inc.*, 2008 MT 175, ¶ 22, 343 Mont. 392, 185 P.3d 332; *Davidson*, ¶¶ 20-21); *Hanson*, ¶ 31; *see also* 17A Am. Jur. 2d *Contracts* § 448 (2026).  Condition precedents to formation and to performance have distinct effects on a contract's enforceability.  *Hanson*, ¶ 31; *Bender*, ¶ 14; *Thompson*, ¶ 22.

¶17    A condition precedent to contract formation is "usually an extraneous event or circumstance or third-party act, the occurrence upon which the reciprocal promises constituting the contract consideration depend."  *Hanson*, ¶ 31 (citing *Davidson*, ¶ 20); *Thompson*, ¶ 22; *Bender*, ¶ 14.  A condition precedent to formation must be manifest, clear, and definite.  *Hetherington*, 257 Mont. at 399, 849 P.2d at 1042; *Olsen v. Johnston*, 2013 MT 25, ¶¶ 16, 19, 368 Mont. 347, 301 P.3d 791 (holding that a suggested mode of acceptance did not "clearly and definitively" exclude all other modes of acceptance and therefore did not constitute a condition precedent to contract formation).  If a condition precedent to contract formation is not satisfied, an agreement—otherwise containing all

10

essential elements and material terms—is not a fully formed contract, is non-binding, and is thus unenforceable. *Hanson*, ¶ 31 (citing § 28-1-403, MCA; *Davidson*, ¶¶ 20-21).

¶18 In contrast, a condition precedent to performance is

> typically thought of as existing in conjunction with a bilateral contract. In that case, the exchange of promises creates the contract between the parties, but if one of the parties' performances is due only on the happening of some act or event, as often occurs, that act or event is properly considered a condition precedent to that party's performance.

13 Lord, § 38:4, 419; *see also Bender*, ¶ 14 (quoting *Davidson*, ¶¶ 20-21); *Hanson*, ¶ 31. The non-occurrence of a condition to performance does not affect the formation or enforceability of a contract; instead, it qualifies only the duty to perform. *Hanson*, ¶ 31; *Davidson*, ¶ 21; *Bender*, ¶ 14; 13 Lord, § 38:4, 420. A condition precedent to performance assumes the formation of a contract, and a failure or non-satisfaction of a condition to performance may constitute a breach of contract subject to available remedies. *Davidson*, ¶ 21; *Thompson*, ¶ 22.

¶19 In *Patton v. Madison County*, 265 Mont. 362, 877 P.2d 993 (1994), during an oral settlement agreement, the parties read into the record that the agreement was "conditioned upon the approval of the appropriate settlement documents and covenants by the parties and their attorneys." *Patton*, 265 Mont. at 366, 877 P.2d at 995 (emphasis omitted).[1] This Court considered that language to be a clear and definite manifestation of the parties' intent that formation of a binding agreement was contingent on the approval of later documents. *Patton*, 265 Mont. at 367, 877 P.2d at 995-96. Because the parties did not reach an

---

[1] "Settlement agreements are contracts, subject to the provisions of contract law." *Kluver,* ¶ 31 (citation omitted).

11

agreement on those documents, the terms of the oral settlement agreement were non-binding and unenforceable. *Patton*, 265 Mont. at 367, 877 P.2d at 995-96.

¶20    In *Hanson v. Town of Fort Peck*, Fort Peck and a developer entered a Memorandum of Understanding (MOU) after settlement negotiations. *Hanson*, ¶ 5. The parties then provided the district court with a stipulated motion, stating that they reached "an agreement in principle." *Hanson*, ¶ 5. The parties then asked the court to stay proceedings, noting that final settlement "requir[ed] approval from the [t]own [c]ouncil." *Hanson*, ¶ 5. After a series of disagreements, the developer sought to enforce the MOU on the belief that the town council had approved the MOU. *Hanson*, ¶ 11. Fort Peck countered that the MOU was unenforceable because the parties contemplated a subsequent formal settlement agreement. *Hanson*, ¶ 12. This Court disagreed, concluding that despite the parties' disagreement on the formal settlement's terms, the only agreed-to condition precedent to formation on the record was approval from the town council. *Hanson*, ¶ 32.

¶21    In *Kluver*, we held that the parties' use of terms "tentative" and "draft" after entering an informal agreement were insufficient to establish a condition precedent to formation when that MOU, read in its entirety, demonstrated an intent to enter an enforceable agreement. *Kluver*, ¶ 39. *See also Hetherington*, 257 Mont. at 397-99, 849 P.2d at 1041-42 (holding that parties were bound when they accepted the terms of an informal settlement agreement because they did not manifest an intent not to be bound); *Lockhead*, ¶¶ 8-13 (rejecting parties' argument that a letter accepting negotiated terms was "an agreement to

agree" to a later formal settlement when that letter unconditionally stated, "Brian Lockhead accepts").

¶22 When the parties signed and initialed the original Buy-Sell Agreement, they agreed that they were entering into a contract. Neither the Buy-Sell nor the Amendment clearly and definitively conditioned the formation of a contract under the Buy-Sell on some superseding formal agreement. In fact, the Buy-Sell's first lines, which were incorporated by reference into the Amendment, provide, "This Agreement stipulates the terms of sale of this property. Read carefully before signing. *This is a legally binding contract*." (Emphasis added.) Other incorporated provisions include binding the parties' "heirs, successors, and assigns" to the Agreement and providing the parties' contractual remedies for the other party "refus[ing] or neglect[ing] to consummate the transaction anticipated by [the Buy-Sell]." The plain language of the contract indicates a bilateral agreement.

¶23 Doerings suggest that the parties' continued negotiations of the Contract for Deed's final terms and Spencer Melby's statements that he did not "want to lose this transaction" demonstrate that the parties did not intend to form a contract when they initialed and signed the Buy-Sell and the Amendment. Like in *Hanson* and *Kluver*, the fact that the parties were still negotiating the Contract for Deed's final terms does not manifest an intent not to be bound prior to its execution. *Hanson*, ¶ 32; *Kluver*, ¶ 39. *See also Hetherington*, 257 Mont. at 397-99, 849 P.2d at 1041-42; *Smith v. Johnson*, 245 Mont. 137, 142, 798 P.2d 106, 109 (1990) ("Even though the parties here attempted negotiations of additional terms

13

[under the contract for deed], such does not affect the buy/sell agreement and the ability to maintain suit . . . .").

¶24 The Buy-Sell contained several express contingencies and conditions. The parties included an Inspection Contingency, an Appraisal Contingency, an Insurance Contingency, a Lead Based Paint Contingency, a Financing Contingency, and a Title Contingency. The Contingencies provisions indicate that all contingencies would be deemed "released, waived, or satisfied," unless the party requesting the contingency "notifie[d] the other party . . . in writing that the contingency [was] not released, waived, or satisfied" before 5:00 p.m. on the date specified for that contingency. Only upon that written notification could a party terminate the Agreement based on the non-satisfaction of a specified contingency. If a contingency was not met and a party did not give notice, the sale of Marshall Mountain would continue as contracted. These express contingencies were all conditions to performance subject to waiver.

¶25 The Financing Contingency provision provided that "[i]f financing [specified in the Purchase Price and Terms provision could not] be obtained by the Closing Date [the] Agreement [would be] terminated . . . ." The Purchase Price and Terms provision was the only provision affected by the Amendment, with all other terms incorporated by reference. Considering the entirety of the Buy-Sell and its general intent—contracting deadlines and responsibilities to facilitate the conveyance of Marshall Mountain—"[f]inal contract for deed to be mutually agreed upon by both parties" is, at most, a condition precedent to closing, *i.e.* full performance. Spencer Melby's sentiment that he did not want to lose the

14

transaction thus does not show that the parties agreed that the Contract for Deed's final terms were necessary to create a binding contract. Instead, his statements demonstrate a belief that if the parties failed to reach an agreement on the Contract for Deed's final terms, then that failure would prevent the Melbys from obtaining the financing specified in the Purchase Price and Terms provision. Consequently, Doerings would not be lawfully obligated to perform at closing per the Buy-Sell's express terms.

¶26 The Buy-Sell provided two blank placeholders, consisting each of five lines, both beginning: "This Agreement is contingent upon . . . ." Within those blank placeholders, the parties had the opportunity to include that mutual agreement to the Contract for Deed's final terms was a condition precedent to the Buy-Sell's binding effect once the parties agreed to execute the Amendment and enter a seller-financing relationship. But neither Melbys nor Doerings amended the Contingency provisions to expressly include such a contingency. Rather, they amended only the Purchase Price and Terms provision. The parties' failure to amend the Contingencies provisions—the provisions most relevant to Doerings' theory of the case—further shows that the parties did not clearly and unambiguously indicate that the Agreement's independent enforceability was contingent on the Contract for Deed's final terms.

¶27 An agreement nonetheless may not be enforceable if it does not contain all essential elements or material terms. *Hurly*, ¶ 17 (citation omitted); *Kluver*, ¶ 36 (citing *Steen*, 132 Mont. at 104, 313 P.2d at 1019). The parties must mutually agree "upon the same thing in the same sense." *Zier v. Lewis*, 2009 MT 266, ¶ 19, 352 Mont. 76, 218 P.3d 465 (citation

15

omitted).  The material terms for the conveyance of real property generally include "the parties, the subject matter, a reasonably certain description of the property affected, the purchase price or the criteria for determining the purchase price, and some indication of mutual assent."  *Perl v. Grant*, 2024 MT 13, ¶ 15, 415 Mont. 61, 542 P.3d 396 (citing *Olsen*, ¶ 21).

¶28    The District Court concluded that the Buy-Sell and Amendment satisfied all material terms for the transfer of real property.  The District Court treated the material terms for the sale of real property enumerated in *Perl* and *Olsen* as exhaustive.  It then reasoned that any terms to be included in the Contract for Deed went to mere performance, and the Buy-Sell and Amendment did not need to include those terms to constitute a binding contract.

¶29    Doerings argue that the District Court's reliance on *Olsen* to determine whether the Buy-Sell and Amendment contained all material terms was misguided.  Doerings emphasize that under the seller-financed Contract for Deed, they were to maintain legal title until Melbys made all payments for the purchase of Marshall Mountain— distinguishable from a "pay and take agreement."  Doerings argue that, at most, the Buy-Sell and Amendment constituted an agreement to agree.

¶30    Doerings cite *Dineen v. Sullivan*, 123 Mont. 195, 199, 213 P.2d 241, 243 (1949), to support their position.  At issue in *Dineen* was whether a written memorandum "contain[ed] the essential elements of the verbal agreement of the parties in that case[.]" *Maxted v. Stenberg*, 166 Mont. 460, 466-67, 534 P.2d 864, 868 (1975) (discussing *Dineen*,

16

123 Mont. at 195, 213 P.2d at 241). The written memorandum, "in order to satisfy the statute of frauds*, must contain all the stipulations and undertakings of the verbal bargain.*" *Dineen*, 123 Mont. at 201, 213 P.2d at 244 (emphasis in original) (citing John Norton Pemeroy, *A Treatise on the Specific Performance of Contracts*, § 91, 225 (3d ed. 1926)). We concluded that there was not a binding contract in *Dineen* because the written agreement did not contain numerous provisions that the parties allegedly had agreed to *orally*. *Dineen*, 123 Mont. at 205, 213 P.2d at 246. We held that if there is some condition upon which the parties allegedly have agreed, "these must be included in the memorandum" for it to be enforced. *Dineen*, 123 Mont. at 201, 213 P.2d at 244. In short, "[i]t is not sufficient that the note or memorandum may express the terms of the contract. It is essential that it shall completely evidence the contract which the parties made." *Dineen*, 123 Mont. at 202-03, 213 P.2d at 245 (quoting *Poel v. Brunswick-Balke-Collender Co. of New York*, 110 N.E. 619, 620 (N.Y. 1915)).

¶31     In *Maxted v. Stenberg*, a buyer sued a seller for specific performance when the seller refused to convey real property after the parties executed a buy-sell but before reducing to writing the contract for deed's final terms. 166 Mont. 460, 461-65, 534 P.2d 864, 865-67. The defendant in *Maxted* challenged the independent enforceability of the written buy-sell, claiming the contract for deed was an entirely new agreement consisting of new material terms. *Maxted*, 166 Mont. at 467, 534 P.2d at 868. The Court in *Maxted* first found *Dineen* distinguishable because the facts presented to the *Maxted* Court did not involve alleged oral agreements that were not included in a written agreement. *Maxted*, 166 Mont. at

466-67, 534 P.2d at 868. Instead, the Court held that "[t]he conduct of the parties, the admissions in the pleadings, the trial record, and the fact that [the buy-sell] was prepared by the sellers' agents le[ft] no doubt that it contained the oral agreements of the parties and [was] complete and certain in all essential matters as required by Montana law, and [was] therefore enforceable . . . ." *Maxted*, 166 Mont. at 468-69, 534 P.2d at 869 (applying *Steen*, 132 Mont. at 106, 313 P.2d at 1014); *see also Smith*, 245 Mont. at 142, 798 P.2d at 109.

¶32    Like the defendants in *Maxted*, Doerings do not allege that the parties made a verbal agreement to material terms that were excluded from the four corners of the Buy-Sell and the Amendment. *Maxted*, 166 Mont. at 468, 534 P.2d at 869. Doerings ask this Court instead to infer that the parties did not mutually assent to the material terms relevant to the sale of Marshall Mountain because the Contract for Deed involved a fundamentally new agreement consisting of unnegotiated material terms. Thus, like in *Maxted*, *Dineen* is inapt to our analysis. We instead rely on *Steen* and its progeny to determine whether the Buy-Sell and the Amendment constitute an independently enforceable agreement.

¶33    Since our decision in *Steen*, this Court consistently has held that when parties enter a binding agreement, "the fact that they plan to incorporate it into a more formal contract in the future does not render it unenforceable." *Kluver*, ¶ 36 (citing *Steen*, 132 Mont. at 104, 313 P.2d at 1019). This is distinguishable from "an agreement that requires the parties to agree to material terms in the future"—an agreement to agree. *Hurly*, ¶ 18 (citing *GRB Farms*, ¶ 11 (citing *Steen*, 132 Mont. at 104, 313 P.2d at 1019)). It is not necessary that the preliminary writings provide "absolute certainty and completeness in every

detail . . . ." *Kluver*, ¶ 36 (citing *Steen*, 132 Mont. at 106, 313 P.2d at 1020). The writing need only contain "reasonable certainty and completeness," *Kluver*, ¶ 36, as to the "critical issues" of the contract. *Hurly*, ¶ 17 (citing *Zier*, ¶ 23). An informal agreement is sufficient to form an enforceable contract when "the language used shows a meeting of the minds on some particular subject matter . . . . [M]ere reference to a future contract in writing will not negative the existence of a present and completed" contract. *Steen*, 132 Mont. at 104, 313 P.2d at 1019 (citation omitted).

¶34    We reinforced in *Olsen v. Johnston* that "[t]he material terms of a contract for the sale of real property will include the parties, the subject matter, a reasonably certain description of the property affected, the purchase price or the criteria for determining the purchase price, and some indication of mutual assent." *Olsen*, ¶ 21 (citing 10 Richard A. Lord, *Williston on Contracts*, § 29:8, 616-18 (4th ed.)). Alongside this standard, *Olsen* reiterated that "[s]ubsidiary matters, collateral matters, or matters that go to the performance of the contract do not constitute material terms." *Olsen*, ¶ 21 (citing *Kluver*, ¶ 38; *Steen*, 132 Mont. at 106, 313 P.2d at 1020); *Maxted*, 166 Mont. at 468, 534 P.2d at 868-69. [2]

---

[2] The majority of our precedent recites the legal standard that "[s]ubsidiary matters, collateral matters, or *matters that go to the performance of the contract do not constitute material terms*." *Olsen*, ¶ 21 (emphasis added) (citing *Kluver*; ¶ 38, *Steen*, 132 Mont. at 106, 313 P.2d at 1020); *Maxted*, 166 Mont. at 468, 534 P.2d at 869; *Gropp v. Lotton*, 160 Mont. 415, 421, 503 P.2d 661, 665 (1972); *Keaster v. Bozik*, 191 Mont. 293, 302, 623 P.2d 1376, 1381 (1981); *Majers v. Shining Mountains*, 230 Mont. 373, 378, 650 P.2d 449, 452 (1988); *Quirin v. Weinberg*, 252 Mont. 386, 394, 830 P.2d 537, 541 (1992); *McDonald v. Cosman*, 2000 MT 126, ¶ 16, 299 Mont. 499, 6 P.3d 956; *Miller v. Kleppen*, 2019 MT 83, ¶ 18, 395 Mont. 286, 438 P.3d 806. A minority of our precedent, on which Doerings rely to support their argument, provide that "[m]atters which are subsidiary, collateral, or *which do not go* to the performance of the contract are not essential and

¶35 In *Hurly v. Lake Cabin Development, LLC*, the parties contracted to transfer property in exchange for cash payments and the building of additional structures on the property. *Hurly*, ¶ 20. The parties stipulated that they would determine the details for the structures in the future. *Hurly*, ¶¶ 20-21. Material to our decision there was that the agreement explicitly provided that "[t]his [a]greement shall constitute the *entire agreement* between the [s]eller and [b]uyer." *Hurly*, ¶ 21 (emphasis added). We held that because the contract provided sufficient information to render the parties' obligations "clearly ascertainable," the contract was enforceable. *Hurly*, ¶¶ 21-22 (quoting *GRB Farms*, ¶ 11).

---

do not have to be expressed in the contract." *Van Atta v. Schillinger*, 191 Mont. 472, 477, 625 P.2d 73, 76 (1981) (emphasis added) (citing *Steen*, 132 Mont. at 106, 313 P.2d at 1020); *Patton*, 265 Mont. at 367, 877 P.2d at 996 ("The matters still at issue were not 'subsidiary,' or 'collateral,' they were central to the very performance of the contract."); *Hetherington*, 257 Mont. at 400, 849 P.2d at 1043; *Jarussi v. Sandra L. Farber Tr.*, 2019 MT 181, ¶ 19, 396 Mont. 488, 445 P.3d 1226. Though the latter presents an imprecise statement of the law, it is not wholly incompatible with our phrasing in *Steen*. As we explained in *Olsen*, "The *parties' agreement* establishes the material terms of the contract." *Olsen*, ¶ 21 (emphasis added) (citing *Dineen*, 123 Mont. at 202, 213 P.2d at 244-45). Generally, to satisfy the statute of frauds, the memorandum need not specify matters relating to time and place, *i.e.* performance, because those matters "the law will imply or . . . may be inferred from the facts given . . . ." 10 Lord, § 29:8, 636; *see also Johnson v. Elliot*, 123 Mont. 597, 605, 218 P.2d 703, 707 (1950); *Hughes v. Melby*, 135 Mont. 415, 421, 340 P.2d 511, 515 (1958). That is, those matters that the law implies or that may be inferred from the circumstances are "collateral" or "subsidiary" matters, which the informal agreement's terms do not need to specify to create an independently enforceable agreement. *Olsen*, ¶ 21 (citation omitted). This general principle, however, does not preclude a court from recognizing that the parties "*expressly* dealt otherwise" and agreed that terms regarding performance were material to their contract formation. 10 Lord, § 29:8, 636 (emphasis added). *See e.g. Patton*, 265 Mont. at 367, 877 P.2d at 996. It is uniformly held, by this Court and others, that, unless expressly and otherwise indicated, a written agreement for the sale of real property is a valid and binding agreement if it includes the following material terms: "the parties, the subject matter, a description of the property, . . . the price or consideration . . . and an indication that the parties have mutually assented to the terms of the agreement." 10 Lord, § 29:8, 616-18; *Perl*, ¶ 15 (citing *Olsen*, ¶ 21). Whether additional terms addressing performance are material to the sale of real property depends on the parties' agreement, but without evidence suggesting the materiality of those terms, the law assumes they are collateral or subsidiary. *Olsen*, ¶ 21 (emphasis added) (citing *Dineen*, 123 Mont. at 202, 213 P.2d at 244-45).

We noted that the parties' inclusion of general plans and express exclusions of to-be-determined specifications demonstrated an "understanding that [those] additional terms were not material" to the parties' mutual agreement when executing the initial contract. *Hurly*, ¶ 21. Importantly, the preliminary agreement did not make such plans and specifications a contingency for the formation of a contract. *Hurly*, ¶¶ 21, 26.

¶36 Here, the Buy-Sell's provisions provide that it and the Amendment constitute an entire and binding contract. The Buy-Sell and the Amendment also contained all material terms recognized to constitute an enforceable agreement for the valid transfer of real property. *Perl*, ¶ 15 (citing *Olsen*, ¶ 21). The parties are the Sellers, Bruce and Kim Doering, and the Buyers, Spencer and Collette Melby. The subject matter is the conveyance of Marshall Mountain. The description of the property consists of the Marshall Mountain's street address, 5250 Marshall Canyon Road in Missoula County, and the property's legal description, as burdened by the easements recognized in the Commitment. The purchase price is $2,150,000. When the parties entered the Amendment, the purchase price also included the amount for down payment, the interest rate, duration, and payment of escrow fees. The parties initialed each page of the Buy-Sell and signed the Buyer's Commitment, Seller's Commitment, and Amendment, respectively.

¶37 Similar to *Hurly*, Doerings and Melbys initialed and signed a document explicitly representing itself as the entire agreement—the Buy-Sell. The Amendment, by reference, incorporated all other terms of the Buy-Sell into its provision except for the change to the Purchase Price and Terms provision. Neither the Buy-Sell nor the Amendment made the

21

contemplated Contract for Deed a contingency for formation of a binding contract. In the Amendment, the parties agreed to the general terms of the seller finance arrangement and that the Contract for Deed would provide more specific terms "to be mutually agreed on by both parties." By doing the above, Doerings and Melbys indicated an understanding that those additional terms were not material to the formation of their agreement under the Buy-Sell and the Amendment. It is thus reasonable to conclude that its four corners contain all mutually agreed-to material terms for the transfer of Marshall Mountain from Doerings to Melbys. *Hurly*, ¶ 21.

¶38 Though, as Doerings note, a Contract for Deed involves a legal relationship distinguishable from a conventionally financed Buy-Sell, the parties included in the Amendment the terms crucial to entering that distinct legal relationship when they amended the Buy-Sell's Purchase Price and Terms provision. The fact that the parties intended to formalize and provide further detail to the Contract for Deed's terms does not in itself render the Buy-Sell and Amendment independently unenforceable. The Amendment's included language evidences a meeting of the minds on the seller-financing relationship and consequently the Agreement's material terms.

¶39 Doerings raise several provisions that their attorney added to the Contract for Deed, positing that these terms were necessary "for the protection of [Doerings]" in the seller-finance arrangement. They suggest the need for those legal safeguards ostensibly made those terms material. The cited terms include the Melbys' personal guaranty, default, available remedies if default occurs, possession and access, maintenance of the property,

22

the timing of escrow delivery, and liability and indemnity provisions. Here, Doerings' emphasis on these terms is similar to the defendant's argument in *Maxted* "that there was no mention of taxes, interest, security, acreage to be planted or time of performance." 166 Mont. at 468-69, 534 P.2d at 468. As in *Maxted*, we find the terms that Doerings emphasize to be collateral and non-essential to a valid contract for sale of real property because they all go to the Contract for Deed's performance and not to the purchase price or other generally recognized material terms for the sale of real property. 166 Mont. at 468-69, 534 P.2d at 468. The record also does not show that the parties agreed, either verbally or in writing, that those additional terms were material to their agreement before executing the Buy-Sell and Amendment.

¶40 Sullivan's first draft for the Contract for Deed, as admitted by Casillas, was typical for most Contracts for Deed. When Casillas proposed the May 18 revisions, he included for the first time the new Public Access provision. Post, Melbys' attorney, expressed concerns that Doerings were materially altering "the nature and character of what [Melbys] *contracted* to buy" under the Buy-Sell. (Emphasis added.) Post then cited the Buy-Sell's Condition of Title provision as a binding term that prohibited Doerings from adding a public access easement to the Contract for Deed. In a deposition, Casillas admitted that the May 18 revisions to the Contract for Deed were not typical. He specifically noted that the Public Access provisions rendered the Contract for Deed "not a usual transaction."[3]

---

[3] After Melbys filed their Appellees' Brief, Doerings moved to strike several of Melbys' Appendices and to disregard all argument relying upon those materials. They contend that the District Court found the documents to contain privileged attorney-client communications with Casillas. Melbys opposed the motion to strike on the grounds that the privilege had been waived

Though Doerings allege that Melbys knew about their interest in maintaining public access on Marshall Mountain and that the Melbys suggested that they would continue that access, they, in the end, do not contend that the parties made a verbal or written agreement that the Public Access provision was a material term to their Agreement.

¶41 On the contrary, this allegation and the Public Access provision directly contradict the express terms of the Buy-Sell and Amendment as well as objective evidence demonstrating the circumstances when the parties executed those writings. The Title Contingency provision, read together with the Commitment and the Condition of Title provision, shows that Melbys and Doerings had explicitly agreed to specific easements on Marshall Mountain, none of which included a public access easement. The Commitment described special exceptions to the offered title insurance coverage: an existing driveway, a private road, and a blanket easement for lawn sprinkling. The Commitment was silent on any public access easement. The Title Contingency provision provided Melbys the opportunity to object to the listed special exceptions and Doerings the opportunity to remediate any of Melbys' objections. As Post noted in his May 21 email, once Melbys executed the Commitment on March 12, 2021, the Condition of Title provision prohibited Doerings from asserting or creating "additional encumbrances, restrictions, easements or other adverse title conditions . . . ." Neither Melbys nor Doerings objected to the

and that the documents were submitted in the trial court without Doerings' objection. Upon review, we find it unnecessary to decide whether the privilege was waived, as our Opinion does not rely on Casillas's communications with Doerings. Outside any privileged communication, Casillas described during his deposition his conversation with Post, when he agreed that the May 18 revisions to the contract for deed were not typical. In light of our discussion in this Opinion, we deny the motion to strike as moot.

Commitment for failing to recognize a public access easement. The Public Access provision contradicts the Title Contingency, Commitment, and Condition of Title. Those provisions also demonstrate that the parties, prior to the execution of the Amendment, had agreed that the Buy-Sell and Amendment contained a reasonably certain description of Marshall Mountain, which did not include a public access easement.

¶42 On appeal, the gravamen of Doerings' argument is that material differences between a "pay and take agreement" and a seller-financing relationship created additional material terms. But the Public Access provision, which ultimately caused Doerings to terminate negotiations under the Contract for Deed, introduced a new term unrelated to the parties' seller-finance relationship or the amended Purchase Price and Terms provision. Though true that transitioning from conventional financing to seller financing altered the parties' legal relationship from that initially agreed to in the Buy-Sell, it in fact was not until Doerings added the Public Access provision that negotiations began to deteriorate. The Public Access provision is atypical for contracts for deed, contradicted other terms of the Buy-Sell and Amendment, and materially altered the reasonably certain description of the property the Melbys agreed to purchase. The impetus for the failed negotiations—the Public Access provision—was unrelated to any alleged material differences contemplated by the parties when they entered the Amendment.

¶43 This development in the Contract for Deed negotiations proves critical when considered with all the circumstances of the transaction. First, the Buy-Sell and Amendment do not clearly and unambiguously provide that the agreement to the Contract

for Deed's final terms was a condition precedent to formation. Second, Doerings do not allege that the parties orally agreed to such a term. Third, the parties provided general terms for the Contract for Deed, describing the substantive and material aspects of the agreed-to seller-financing relationship. The additional, alleged material terms not included in the Amendment address the Contract for Deed's performance and thus are subsidiary. Fourth, the Public Access provision, though a material term, contradicts the Buy-Sell and Amendment and is irrelevant to the Purchase and Price Term provision, which is the only provision that the Amendment expressly changed. Importantly, the Public Access provision contradicts the Commitment and Condition of Title provision, which together prohibited Doerings from adding the public access easement and further informed the reasonably certain description of Marshall Mountain. Combined, these facts "leav[e] no doubt that [the Buy-Sell and the Amendment] contained the oral agreements of the parties and is complete and certain in all essential matters, as required under Montana law . . . ." *Maxted*, 166 Mont. at 468-69, 534 P.2d at 869.

¶44 Together the Buy-Sell and Amendment constituted an enforceable contract. Doerings materially breached the express terms of the Agreement when they added the Public Access provision in direct contradiction of the Entire Agreement, Title Contingency, Condition of Title provisions and the Commitment. Doerings further breached when they terminated negotiations under the Contract for Deed based on Melbys' refusal to grant public access to the entirety of Marshall Mountain upon receipt. Because we hold that the Buy-Sell and Amendment constituted an independently enforceable agreement, and the

Melbys do not otherwise challenge the District Court's conclusions, we do not disturb the District Court's determinations that Doerings materially breached and that Melbys were injured.

**CONCLUSION**

¶45 We affirm the District Court's partial summary judgment order and remand for further proceedings.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE